[Civ. No. 18664. First Dist., Div. One. Apr. 29, 1960.]

GRATTAN D. PHILLIPS, JR., et al., as Guardians, etc., Appellants, v. STANDARD ACCIDENT INSURANCE COMPANY (a Corporation), Respondent.

Frank J. Baumgarten for Appellants.

Thomas E. Davis for Respondent.

MOLINARI, J. pro tem.*—The essential facts in the case at bar may be stated as follows: Margaret A. Phillips, hereinafter referred to as Mrs. Phillips, signed and executed a check drawn upon the Crocker First National Bank of San Francisco, payable to the order of Edward Planer, Tax Collector of Oakland, in the amount of $2,744.54. One Edward T. Planer was tax collector of Alameda County in the year 1938. There is no direct evidence that the check was sent to or that it was received by the said Edward T. Planer or by the tax collector's office of Alameda County. Mrs. Phillips did not own any property in Oakland or Alameda County, nor was she indebted for taxes to either said city or said county. It appears that there were two unimproved lots assessed to a Margaret V. G. Phillips in Alameda County upon which the April 1938 installment amounted to $110. There is no direct evidence that this taxpayer was the same person as Mrs. Phillips. There was some testimony that Mrs. Phillips did own two improved lots in Alameda County, but that, at some unestablished time she made a transfer of them to her daughter. The check does not bear the endorsement of Edward T. Planer nor does it bear the usual endorsement of the Alameda tax collector's office. On April 25, 1938, the check was presented by the Bank of America through the clearing house to the Crocker bank which returned it with the stamped notation "Endorsement Missing." A Bank of America teller by the name of Helen E. Miller thereupon placed a rubber stamp endorsement thereon reading "Deposited To The Credit of Edward Planer Tax Coll. Oakland, Bank of America National Trust and Savings Association, H. E. Miller, Teller." The check was then presented through the clearing house on April 27, 1938, and payment thereon was effected.

There is no evidence that Edward T. Planer, either individ-

---

*Assigned by Chairman of Judicial Council.

ually or as tax collector, had an account with said Bank of America. Checks received by the said tax collector were delivered almost daily to said Bank of America for presentation for collection and exchanged for a cashier's check in the aggregate sum thereof payable to the order of Edward T. Planer, Tax Collector. This cashier's check was in turn deposited by said Edward T. Planer with the county treasurer of Alameda County. The Bank of America has no record of the cashier's checks for the period in question but a representative of the bank testified that from their procedure he "assumed" that the check in question was credited to said tax collector by way of such a cashier's check. There are no records in the tax collector's office which indicate that the check in question was credited to any particular parcel of property or that it was credited at all.

In 1942, Mrs. Phillips again forwarded a check to Edward T. Planer for $3,076.19, but this check was personally endorsed by Mr. Planer and returned. Said check was negotiated by Edward T. Bryant, Tax Collector of the City and County of San Francisco, where Mrs. Phillips owned substantial property.

During the period commencing prior to 1938 and continuing to December 1949, when Mrs. Phillips suffered a stroke, she managed her own affairs, exercised control over her bank account, issued checks, and took care of paying her servants and household bills. From 1935 to 1949 Mrs. Phillips personally issued checks to the tax collector both of San Francisco and Oakland, for real estate taxes on behalf of herself and her daughter, Virginia Dalla-Rosa Prati, who was absent from San Francisco during most of said time. There were no irregularities in the issuance of any of these checks excepting the two checks hereinbefore referred to payable to Planer. During said time Mrs. Phillips served as a director and as president of the Phillips and Van Orden Company. In 1946 she executed a lease in her capacity as president of said company wherein a portion of the building premises occupied by said company and which she personally owned were leased to the Pacific Telephone and Telegraph Company. From time to time she received dividend checks from said company and deposited them in her bank account. In 1948 she executed a deed and transferred to her son as a gift an apartment house which she had purchased for $50,000; and in the same year, as president of the Phillips and Van Orden Company, Mrs. Phillips participated in the sale of said business for which she

received the sum of $106,965.33, payable in five installments as evidenced by a promissory note, for her one-third interest. In 1949, Mrs. Phillips purchased real property at 415 Sutter Street, San Francisco, paying $70,000 in cash and securing the balance of the purchase price by way of a mortgage.

On January 25, 1950, Mrs. Phillips was adjudged incompetent by the Superior Court of the City and County of San Francisco and letters of guardianship were issued to the plaintiffs who are the son and daughter of Mrs. Phillips.

There was testimony on the part of the daughter-in-law that as far back as 1933 Mrs. Phillips was irascible, penurious, and that she complained about people stealing from her; that from 1934 or 1935 down to the time of her stroke she was at times confused about her affairs and events; that from 1935 to 1950 Mrs. Phillips was unstable; that from 1933 or 1934 she suffered from a bad arthritic condition which was so crippling as to require the use of two canes; that for at least 15 years the condition of Mrs. Phillips' home was filthy; that she would fire servants frequently; that within the past 20 years she left her home infrequently; that within the past 15 years she refused to leave her bedroom; that from 1938 Mrs. Phillips became progressively more forgetful and that she had mental lapses. The daughter-in-law testified further that from 1938 to 1949 her husband assisted his mother in her business affairs, but stated she couldn't say whether Mrs. Phillips was capable of understanding her business affairs because nobody could find out from her what her business affairs were.

The plaintiff son testified that in 1932 or 1933 his mother began to suffer from painful arthritis; that she had no other disorders until 1934 or 1935 when she began to show certain personality changes which became progressive. These changes consisted of her being short-tempered; very arbitrary in her ideas; difficult with servants; suspicious that persons were taking advantage of her; her being confused; her refusal to receive anyone and sometimes to see him; and her requesting him to do something one day and denying that she did so the next day. He testified that he visited her frequently; that she left the house infrequently from 1935 to 1949 because her arthritis was very painful and it was difficult for her to descend from and ascend to her second floor living quarters. It was his testimony that he discussed business transactions with his mother; that she sought his advice and usually relied on his judgment and advice; that the $50,000 apartment house and 415 Sutter Street transactions were purchased by his

mother on his recommendation. The son stated that his mother handled business affairs for his sister who was a resident and citizen of Italy. It was his statement that his mother seemed confused so far as business affairs were concerned; and that with reference to the check in question, that "I don't think her mind was functioning properly when she made it." When asked whether, at the time of receiving the deed of gift to the apartment house from his mother, he believed his mother was mentally incompetent he replied: "I have not said that she was mentally incompetent. I'm not a physician. You've the testimony of an expert physician here." In response to a query as to whether at that time it had not occurred to him to question his mother's sanity, he replied: "I have never said my mother was insane"; and stated further, "I did feel this; that upon advice of my own physician that she was suffering from arteriosclerosis, but that doesn't mean insanity, and I don't like the term." The son testified that after he was appointed guardian he took no steps to set aside the conveyance of the apartment house on the ground of his mother's incompetency and that he did not report it as an asset of the guardianship.

There was no testimony on the part of any physician who had treated or seen Mrs. Phillips except Dr. Walter Schaller who saw her only once in December of 1949. Dr. Schaller testified that Mrs. Phillips suffered from brain arteriosclerosis, a disease which develops progressively until it culminates in a stroke. He testified that this disease even in its early stages impairs mental factors; that an arteriosclerotic person is often depressed, withdrawn, careless about appearance, has a poor memory and has periods of confusion. The doctor testified further that he would not go so far as to say Mrs. Phillips was incompetent to transact some business, but that he did not believe she was mentally competent "for a number of years prior to her stroke." He stated that he thought the act of issuing the checks (to Planer) itself "proves she was mentally incompetent." The doctor acknowledged that it was possible that Mrs. Phillips would at times have been perfectly normal and competent and alert mentally and that at other times she might be absent-minded and a little confused.

After his appointment as guardian, the plaintiff, Grattan D. Phillips, discovered, for the first time, some uncashed dividend checks and the check in question; and upon making inquiry found that his mother did not own any property in Alameda County in 1938 for which she was liable in taxes. He at-

tempted to trace the funds and to secure a refund. A refund was refused. Thereupon he brought this action against the defendant surety company upon the official bond of Edward T. Planer, as tax collector for Alameda County. The issues were tendered upon a complaint on said official bond charging in substance a breach of official duty in collecting and retaining said sum of $2,744.54 for taxes upon property which the said Margaret A. Phillips did not have in Alameda County; alleging that at the time said check was issued and until her judicial declaration of incompetency Mrs. Phillips was incapable of understanding the nature and effect of her acts and was incapable of transacting business; and alleging discovery of the check payment on the part of plaintiffs within three years of the date of the filing of the complaint. The answer of the defendant denied the allegations of the complaint and pleaded the statute of limitations as an affirmative defense. The cause came on trial before the court without a jury. It found generally in the defendant's favor, and entered judgment for the defendants. The plaintiffs appeal from the judgment urging that the evidence is insufficient to support the findings.

Where findings are attacked for insufficiency of the evidence, the power of the appellate courts begins and ends with a determination as to whether there is any substantial evidence to support them. The reviewing court has no power to judge the effect or the value of the evidence, to weigh the evidence, to consider the credibility of witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. We must accept as true all evidence tending to establish the correctness of the findings of the trial judge. All conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged in to support the judgment. (*Overton* v. *Vita-Food Corp.*, 94 Cal. App.2d 367 [210 P.2d 757]; *In re Gano*, 160 Cal.App.2d 700, 705 [325 P.2d 485]; *Ames* v. *Ames*, 168 Cal.App.2d 39 [335 P.2d 135].) As said in the Gano case, citing *In re Estate of Teel*, 25 Cal.2d 520 [154 P.2d 384], "All of the evidence most favorable to respondents must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed."

The brief of appellants and the reporter's transcript demonstrate that the evidence in the present case is conflicting.

The trial court chose to resolve the factual conflict in favor of the defendant. This determination cannot be disturbed on appeal. We are, in effect, being asked to reweigh the evidence. This we cannot do.

The appellant and respondent both make reference to the memorandum opinion of the trial court. It is elementary that the opinion of the trial judge cannot be used to impeach the findings of the court. The findings supersede the opinion. (*Gantner* v. *Gantner*, 39 Cal.2d 272 [246 P.2d 923]; *Fine* v. *Denny*, 111 Cal.App.2d 402 [244 P.2d 983]; *Maxwell* v. *Perkins*, 116 Cal.App.2d 752 [255 P.2d 10].) We must therefore look to the findings and determine whether they are supported by the evidence.

 A review of the evidence demonstrates that there is ample evidence for the court's finding on the issues tendered. The court found that at the time of issuing the check in question on April 5, 1938, and for more than three years thereafter, the said Margaret A. Phillips was competent and able to manage her affairs of the nature involved in this action, and did manage such affairs and continued to manage them, to issue checks, pay household bills, execute deeds, and take care of her own affairs, all with the full knowledge of the plaintiff, Grattan D. Phillips, Jr. The court further found that the said Margaret A. Phillips was not at the time of the issuance of said check or for more than three years thereafter, insane or mentally incompetent to manage her usual and normal business affairs, or to understand transactions of the nature involved in this action, and that she was fully competent when said check was cashed, deducted from her bank balance and returned to her, to understand that the same had been paid and charged to her account. There is substantial evidence tending to support the correctness of these findings. The court made other findings having to do with the nature and extent of Mrs. Phillips' infirmities, her participation in major business transactions with the advice and guidance of her said son, and the absence of her daughter from San Francisco. In our opinion these are evidentiary facts and not ultimate facts. Even these, however, find ample support in the evidence. "It has been held over and over in this state that old age, feebleness, forgetfulness, filthy personal habits, personal eccentricities, failure to recognize old friends or relatives, physical disability, absent-mindedness and mental confusion do not furnish grounds for holding that a testator lacked testamentary capacity." (*Estate of*

*Selb,* 84 Cal.App.2d 46, 49 [190 P.2d 277] ; Estate of *Dobrzensky,* 105 Cal.App.2d 134 [232 P.2d 886].) By analogy the same rule is applicable to the mental capacity of Mrs. Phillips in the present case. ▮ The trial court had the right to disregard these circumstances as grounds for the contention that Mrs. Phillips was not mentally incompetent. These elements made up the bulk of the testimony offered to prove such incompetency. The court, nevertheless, considered this testimony and weighed it with all other in arriving at its finding concerning mental capacity. It is not for us to reweigh it.

▮ Although there was testimony to this effect admitted, in other instances the court sustained an objection to a question asked of the plaintiff son as to whether his mother was competent or incompetent to transact her affairs. Appellant claims that this was error. The ruling was proper. The question called for the ultimate fact in issue. The witness, as an intimate acquaintance, might properly have been asked to give his opinion as to the sanity of his mother and he might have expressed an opinion that she was of unsound mind. (Code Civ. Proc., § 1870, subd. 10; *Dunphy* v. *Dunphy,* 161 Cal. 380, 385 [119 P. 512, Ann.Cas. 1913B 1230, 38 L.R.A. N.S. 818] ; *Vitale* v. *Vitale,* 147 Cal.App.2d 665 [305 P.2d 690].) But here he was asked to give an opinion as to the very fact which was for the court's determination. The witness, in other respects, was permitted to testify as to his mother's sanity.

▮ Appellant concedes that his recovery in this action upon an official's bond is governed by section 338, subdivision 1 of the Code of Civil Procedure as it existed in 1938, providing that an action upon ''a liability created by statute'' must be brought within three years. The trial court concluded that the cause of action here was barred by both said section and subdivision 5 which was added in 1943 and specifically provided for actions and bonds of public officials. Suffice it to say, the cause of action here accrued on April 5, 1938, and became barred on April 5, 1941, unless it was tolled by section 352, subdivision 2 of the Code of Civil Procedure providing that if a person entitled to bring an action is insane the time of such disability is not a part of the time limited for the commencement of the action. The court has found that there was no such disability during said three-year period and hence concluded that the cause of action, if any, was barred by the statute of limitations. Subdivision 5 of section 338 which was enacted in 1943 would not then come

into play because the cause of action here was already barred when it was enacted. The appellant concedes in his brief that if the evidence is sufficient to sustain the finding that Mrs. Phillips was not mentally incompetent or insane during this three-year period, then the cause of action is so barred. The trial court has treated the conclusion that the action here is barred by the statute of limitations as a finding of fact. It is rather a conclusion of law. The findings here not only support the conclusion of law but they support the judgment as well.

In view of the conclusion reached by the trial court that the cause of action, if any, is barred by the statute of limitations, it becomes unnecessary for us to consider the other points raised on appeal.

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.