[L.A. No. 30589. Sept. 17, 1976.]

AGUSTINA SANCHEZ, Plaintiff and Appellant, v.
SOUTH HOOVER HOSPITAL et al., Defendants and Respondents.

94

## COUNSEL

Manuel Lopez and Michael A. Petretta for Plaintiff and Appellant.

Kirtland & Packard, Harold J. Hunter, Jr., Richard P. Booth, Jr., and Robert E. Moore, Jr., for Defendants and Respondents.

## OPINION

**RICHARDSON, J.**—We consider the application of the statute of limitations in medical malpractice actions and, particularly, construe section 340.5 of the Code of Civil Procedure as it read prior to September 24, 1975. That section then provided that the limitations period for actions founded in medical malpractice was "four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs." The section further recited that "[t]his time limitation shall be tolled for any period during which [the treating physician or hospital] . . . has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him."

We will hold that this tolling provision applied only to the four-year and not to the one-year limitations period contained in the statute, concluding, therefore, that the trial court properly found plaintiff's action barred by the lapse of more than one year between the date when plaintiff either discovered, or "through the use of reasonable diligence" should have discovered, her injury and the date of filing the complaint. We will thus affirm the summary judgment for defendants.

Under the professional care and attention of a physician, defendant Pilson, plaintiff entered defendant hospital around March 19 or 20, 1972, for the birth of her child. After a difficult two-day labor, during which plaintiff asserts that she was continuously restrained physically, her baby was stillborn following Pilson's performance of a Caesarian section on March 22.

Plaintiff remained in the hospital post-surgically until March 30, during which time there was continuous drainage from the Caesarian incision, and plaintiff felt that her wound was not healing properly. On

March 30, 1972, she was discharged from the hospital with a high fever, and she recalls that when she stood up, preparatory to leaving, "many things" fell from her wound. She remembers that a hospital employee, observing her condition at that time, told her, "They have done a mess with you." Nonetheless, plaintiff never questioned Pilson about his treatment of her, nor did she discuss her condition with the hospital administration, although urged to do so by the employee.

Pilson, when advised of plaintiff's high temperature on the day of her departure from the hospital, told her to take aspirin and it would "go away." At this time, plaintiff was suspicious that defendants' negligence had caused both the stillbirth of her child and her own post-operative complications, and had tentatively decided to sue defendant. Following her discharge plaintiff had no further contact with either defendant.

Within two hours after leaving defendant hospital, plaintiff was taken by ambulance to Los Angeles County General Hospital, where she remained convalescent for most of April 1972. Plaintiff filed her malpractice complaint against Pilson and South Hoover on April 16, 1973. She appeals from a trial court order granting defendants' motion for summary judgment, which motion invoked the one-year "discovery" limitations period of section 340.5.

Plaintiff contends that defendants, on their motion for summary judgment, bore the burden of demonstrating that no triable issue existed as to the running of the statute of limitations. Plaintiff further asserts that defendants did not sustain that burden since their supporting papers failed to negate the possibility that, within one year prior to commencement of the action, defendants had knowingly or negligently failed to disclose the facts on which the complaint is based. The validity of this argument depends at the outset upon the assumption that the statutory tolling provision for nondisclosure set forth in the prior version of section 340.5 applied to the one-year as well as to the four-year limitations period described therein. We will conclude that this assumption is incorrect.

We briefly trace portions of the background of section 340.5. Prior to the enactment of this statute in 1970, the limitations period for medical malpractice actions was the one-year term generally applicable to actions for personal injury or death, as provided in section 340, subdivision 3. Since *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312 [57 P.2d 908], however, it had been clear that the limitations period did not commence until the

plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence. (See generally *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588]; *Stafford* v. *Shultz* (1954) 42 Cal.2d 767, 776 [270 P.2d 1]; *Mock* v. *Santa Monica Hospital* (1960) 187 Cal.App.2d 57, 64 [9 Cal.Rptr. 555].) Thus, in many cases, commencement of the statute might be deferred indefinitely.

The rationale for this judicially created tolling rule has been variously described. Most frequently the rule was said to spring from the fiduciary and confidential relationship created between physician and patient the effect of which both compelled disclosure by the physician, on the one hand, and diminished the degree of diligence expected of the patient, on the other. (E.g., *Stafford* v. *Shultz, supra,* at pp. 777-778.) Another basis for the rule, originating in workers' compensation cases, has been the further assumption that, apart from the physician's disclosure, the patient had few other methods of discovering the nature of his abnormal condition and determining its negligent origin, if any. (E.g., *Huysman* v. *Kirsch, supra,* at p. 312.) Thus, it was commonly held that the statute did not run during the period the patient remained in the physician's care. (*Myers* v. *Stevenson* (1954) 125 Cal.App.2d 399, 401-402 [270 P.2d 885].) This corollary did not apply, however, in those cases in which there was evidence of the patient's actual discovery of the injury or a failure to discover through lack of due diligence under the circumstances. (*Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d 57, 64; *Hundley* v. *St. Francis Hospital* (1958) 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R.2d 360].) Repeated efforts to modify this "open-ended" discovery doctrine were unavailing until 1970 when section 340.5 was enacted. (For an amplified discussion of the section's legislative history, see Comment (1971) 2 Pacific L.J. 663, 669-671, and discussion, *post.*)

The principal technical argument supporting the application of the tolling provision to both four-year and one-year limitations periods is the ambiguity which arises from the inclusion in former section 340.5 of the cryptic phrase—"[t]*his* time limitation," following recitation of both the four- and one-year statutory periods. Literally read, the phrase indeed lends some support to the premise that the one-year period was affected by the special tolling provision for concealment. Another troublesome feature is that the phrase is couched in the singular person and does not expressly refer to a particular antecedent phrase. These factors suggest a legislative intent either (1) to make no distinction between the two periods in applying the tolling provision or (2) to affect only the period to

which the provision is more closely placed within the structure of the statute, namely, the one-year period.

However, we are impressed by the fact that to apply the tolling provision to the one-year period would produce a result seemingly at odds with common sense. Under such a construction, the mere fact of nondisclosure by the physician would suspend indefinitely the period within which plaintiff might elect to bring an action, and this even though the plaintiff (1) had *actually discovered* the basis of his action by other means, or (2) could have done so by the exercise of reasonable diligence. In effect, not one but two, elements would always be necessary in order to trigger the running of the one-year period: "discovery" (actual or constructive) by the patient *and* "disclosure" by the doctor— even if the former was, in a particular case, not dependent upon the latter. The mere statement of the proposition argues against its acceptance.

As we have observed, courts have recognized both the physician's fiduciary duty of disclosure, and the frequent interrelationships between discovery and disclosure. The applicable decisional law, however, has rejected any notion that nondisclosure by defendant would toll the statute despite discovery by plaintiff. (*Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d 57, 64; *Hundley* v. *St. Francis Hospital, supra,* 161 Cal.App.2d 800, 806.) Plaintiff's construction, accordingly, requires a conclusion that the Legislature in its adoption of former section 340.5 intended a major overhaul of prior case law.

The legislative history of this section suggests, however, a more modest purpose—that its drafters sought to retain the substance of the common law discovery rule, while modifying its "open-ended" operation. As introduced, Senate Bill No. 362 (1970 Sess.), which ultimately became section 340.5, employed the language subsequently enacted, except that it contained no tolling provision. However, interested parties argued that it would be manifestly unfair to apply the four-year limitations period resulting in an absolute cutoff date in those cases in which plaintiff's failure to discover his cause of action within the statutory period stemmed from the failure of the health care provider to fulfill a fiduciary obligation to disclose errors and omissions. (2 Pacific L.J., *supra,* at pp. 669-671.) This argument was deemed persuasive and the proposed legislation was amended to provide for tolling in the event of "intentional" nondisclosure. In response to the urging that injured plaintiffs should not be expected to carry the burden of demonstrating the physician's intent, further tolling language was added in the form finally adopted.

(*Id.*) The foregoing suggests that the Legislature intended section 340.5 to effect only limited changes in the prior tolling rule.

We are not persuaded by reasoning advanced in support of an alternative interpretation of section 340.5. Briefly, this reasoning runs as follows: (1) former section 340.5 delayed commencement of the one-year limitations period *only* until the patient's discovery of his "injury," regardless of whether negligent cause was also known; (2) this intentional change from prior decisional law served the Legislature's purpose of easing the effect of the "discovery" rule on malpractice defendants; (3) such a change would, however, operate unfairly against injured plaintiffs unless physicians and hospitals were strongly encouraged to advise their otherwise unaware patients that they had been negligently treated; and (4) the Legislature therefore introduced the sanction of tolling in all cases until the health care provider actually disclosed any errors or omissions.

The legislative history to which we previously have alluded gives no indication that the drafters of section 340.5 either intended to modify the common law "discovery" rule in the foregoing fashion or to effect such a change by focusing on the term "injury." In fact, the word "injury" had come to be used in the cases to denote both a person's physical condition *and* its "negligent cause." (E.g., *Stafford* v. *Shultz, supra,* 42 Cal.2d at pp. 776-777; *Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d at p. 64.) We think that the Legislature in enacting section 340.5 intended no more than to adopt the prior "discovery" rule, and that the word "injury" retained, in the context used, the broad meaning the courts had previously given to it.

Our conclusion as to the legislative purpose of section 340.5 is reinforced, by analogy, to a well accepted principle in the law of fraudulent concealment. It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it. (E.g., *Kimball* v. *Pacific Gas & Elec. Co.* (1934) 220 Cal. 203, 210 [30 P.2d 39]; *Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 229 [153 P.2d 325].) Notwithstanding a defendant's continuing efforts to conceal, if plaintiff discovers the claim independently, the limitations period commences. (*Id.*) This rule has been applied even in those cases in which there was imposed on a defendant a fiduciary duty of disclosure. (See *Bowman* v. *McPheeters* (1947) 77 Cal.App.2d 795, 798, 800 [176 P.2d 745] [medical malpractice].)

The rationale for the foregoing rule is that the culpable defendant should be estopped from profiting by his own wrong *to the extent* that it hindered an "otherwise diligent" plaintiff in discovering his cause of action. (*Pashley, supra,* at p. 231.)

Similar policy considerations apply in the matter before us and persuade us against application of the tolling principle to the one-year statute. As the present case demonstrates, the treating physician is not always the only source from which knowledge comes, or from which suspicion arises, that a claim exists. If, in a given case, there is no source of information other than the physician, relative to the existence, and tortious cause, of the claim then the statute will be tolled until disclosure in any event. It is doubtful that an inflexible tolling rule could realistically be expected to discourage affirmative acts of concealment (such as destruction of records); on the contrary, it would encourage stale claims in which reconstruction of the essential facts by all parties would be rendered more difficult. Avoidance of such an "open-ended" operation of the statute of limitations appears to have been the very reason for the enactment of section 340.5. Finally, once a plaintiff is placed on "inquiry," he is, of course, free to sue immediately and thereby to invoke court sanctions, if necessary, against any defendant who seeks to avoid the discovery process.

In dictum, we have previously suggested that it is only the four-year period of section 340.5 which was affected by the tolling provision. (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 181 [98 Cal.Rptr. 837, 491 P.2d 421].) We have the company of respected commentators who, considering the statute, have also assumed that this is the case. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 317, p. 1160, see 2 Pacific L.J., *supra,* at p. 671.)

The Legislature, in its 1975 amendment of section 340.5, resolved any doubt as to its present intention by applying the tolling statute, with clarity, to the longer period only. It retained the one-year "discovery" limitations period, reduced the four-year maximum limitation to three years, and provided that: "In no event shall the time for commencement of legal action *exceed three years* unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." (Code Civ. Proc., § 340.5, as amended, italics added.) The amendment makes substantive changes from prior law, and admittedly cannot be viewed simply as an attempt to

reexpress what was always intended. Nonetheless, the specific relationship and semantic tie thus created between the tolling provision and the statutory three- (formerly four) year period reasonably suggests that the Legislature previously intended a similar connection. In conjunction with the other considerations already discussed, the recent amendment provides some additional indication of the intended meaning of the previous ambiguous language.

In sum, though plaintiff's arguments draw colorable support from ambiguous language included in former section 340.5, her suggested interpretation, in our view, is nonetheless refuted by more convincing indicia of legislative intent.

■ We therefore hold that the tolling provision of the pre-1975 version of section 340.5 applied only to the four-year, and not to the one-year limitations period contained in that statute. It follows accordingly that nondisclosure, for purposes of tolling, did not affect the one-year limitations period at issue herein. Since defendants' motion for summary judgment was premised upon the fact of plaintiff's commencement of suit more than one year after actual discovery of her claim, we need not further consider her assertion that defendants bore a particular burden on the issue of nondisclosure.

We examine the only remaining question, namely, whether the unrebutted evidence presented by defendants in support of their motion established beyond dispute that plaintiff had failed to bring her action within one year after she was placed on notice of its existence. Our affirmative answer leads us to conclude that summary judgment for defendants was appropriate.

■ Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute. The applicable principle has been expressed as follows: "when the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry,* or *has the opportunity to obtain knowledge* from sources open to his investigation . . . the statute commences to run." (2 Witkin, Cal. Procedure, *supra,* Actions, § 339, p. 1181 [citing numerous cases], italics added.) This "inquiry" rule has been previously applied in the area of medical malpractice. (*Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d at pp. 64-65; *Hurlimann* v. *Bank of America* (1956) 141 Cal.App.2d 801, 803 [297 P.2d 682].)

On the other hand, the patient is fully entitled to rely upon the physician's professional skill and judgment while under his care, and has little choice but to do so. It follows, accordingly, that during the continuance of this professional relationship, which is fiduciary in nature, the degree of diligence required of a patient in ferreting out and learning of the negligent causes of his condition is diminished. (*Stafford* v. *Shultz, supra,* 42 Cal.2d at p. 778; *Bowman* v. *McPheeters, supra,* 77 Cal.App.2d 795, 800.) This principle is not confined to the physician-patient relationship alone but exists in other contexts as well, in which it is generally held that existence of the trust relationship limits the duty of inquiry. (E.g., *Knapp* v. *Knapp* (1940) 15 Cal.2d 237, 241 [100 P.2d 759] [trustee]; *Rutherford* v. *Rideout Bank* (1938) 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383] [banker acting as business advisor]; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 296 [295 P.2d 113] [taxpayer suit; city attorney's fraud].)

In their motion for summary judgment defendants rely on plaintiff's deposition which reveals that she was dependent upon the exclusive care of defendants through March 30, 1972. However, her reasonably founded suspicions were undeniably aroused during this period, both by her own recognition of her symptoms and by external corroboration. Plaintiff admits she did not accept defendant Pilson's assurances at face value. Under these circumstances, it is arguable that plaintiff was on notice of defendants' negligence prior to March 30.

Regardless of the possibility of an earlier commencement, however, it is clear that the statute began to run no later than the date of plaintiff's discharge from defendants' care, namely, March 30, 1972. Plaintiff's deposition reveals that, when released, she believed she had been a victim of malpractice. Referring to her state of mind at the time of discharge she said "Yes, I did think they had done something wrong because of all the time that I stayed there suffering." It is fair to conclude that by March 30, 1972, plaintiff had become alerted to the necessity for investigation and pursuit of her remedies. The one-year statute of limitations commenced, and since more than one year elapsed before her complaint was filed the action was manifestly barred.

■ Nor does plaintiff's convalescence in another hospital during April 1972 change this result. Code of Civil Procedure sections 352 and 354 describe the particular personal disabilities which will toll the statute of limitations. These statutory conditions have been held to be exclusive, and they do not include either physical debility or hospital confinement.

(*Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 322 [114 Cal.Rptr. 171]; see *Phillips* v. *Standard Acc. Ins. Co.* (1960) 180 Cal.App.2d 474, 481-482 [4 Cal.Rptr. 277].) Plaintiff's deposition suggests that she had local relatives who might have assisted her in investigating her claim or in retaining counsel to do so. In any event, at least 11 months remained following her final discharge from Los Angeles County General Hospital in which she herself could have done these things.

The application of the statute of limitations combined with the inexorable passage of one year results in a summary judgment preventing assertion of what may well have been a meritorious claim. This consequence, however, similar to that which frequently follows imposition of any rule possessing a fixed duration, is the price of the orderly and timely processing of litigation.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Clark, J., concurred.

MOSK, J.—I concur in the judgment, but disagree with the ratio decidendi of the opinion.

The Court of Appeal, through Justices Thompson and Lillie, properly held that both the one-year and four-year provisions of Code of Civil Procedure section 340.5 are tolled under appropriate circumstances. I therefore adopt that portion of the Court of Appeal opinion as my dissent:

Code of Civil Procedure section 340.5 states: "In an action for injury . . . against a physician or surgeon . . . or a licensed hospital as the employer of any such person, based upon such person's alleged professional negligence . . . or for error or omission in such person's practice [the action must be commenced] four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs. This time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him."

Dr. Pilson and the hospital argue that the tolling provision of Code of Civil Procedure section 340.5 is applicable only to the maximum four-year period of limitations and does not apply to the one-year period from discovery of the injury. Plaintiff argues that the tolling provision is applicable to both time periods.

The syntax of section 340.5 supports a conclusion that the tolling provision is applicable to both the four- and one-year time periods. The period of limitations is phrased in terms of the four-year period from injury or the one-year period from discovery, "whichever first occurs." It is followed by the tolling provision prefaced by the phrase, "This time limitation shall be tolled." The words "This time limitation" are expressed in the singular and apparently qualify and refer to the combined period of limitations "whichever first occurs." [1] Thus tolling is applicable irrespective of whether the first to occur of the limitation periods is four years from injury or one year from discovery.

The legislative history of Code of Civil Procedure section 340.5 supports the same construction.

Beginning with the 1936 decision of our Supreme Court in *Huysman* v. *Kirsch*, 6 Cal.2d 302 [57 P.2d 908], California adopted the proposition that the statute of limitations upon medical malpractice commenced to run not from the date the injury was inflicted but rather from the date that it was discovered. By the late 1960's, the rule was established in California that, " 'In a suit for [medical] malpractice the statute of limitations commences to run when the plaintiff discovers the injury *and its negligent cause* or through the exercise of reasonable diligence should have discovered it.' " (*Whitfield* v. *Roth*, 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588], quoting from *Wozniak* v. *Peninsula Hospital*, 1 Cal.App.3d 716, 722 [82 Cal.Rptr. 84], italics in original.)

Motivated by the "medical malpractice crisis," the California Medical Association, beginning in 1968, sponsored legislation to shorten the open-end statute of limitations resulting from the rule of accrual of the

[1] I add to the Court of Appeal opinion the following quotation from *Porto Rico Ry. etc. Co.* v. *Mor* (1920) 253 U.S. 345, 348 [64 L.Ed. 944, 945-946, 40 S.Ct. 516]: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands the clause be read as applicable to all." (Cited with approval in *Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 659 [82 P.2d 3, 118 A.L.R. 486], and *People* v. *Kahn* (1936) 19 Cal.App.2d Supp. 758, 762 [60 P.2d 596]; also see *United States* v. *Standard Brewery* (1920) 251 U.S. 210, 218 [64 L.Ed. 229, 234-235, 40 S.Ct. 139].)]

claim upon discovery of injury and its negligent cause. (Comment, *Medical Malpractice Cases* (1971) 2 Pacific L.J. 663, 668-669.) The effort was fruitless in the 1968 and 1969 sessions of the Legislature. (*Id.*, p. 669.)

In 1970, the bill creating what is now section 340.5 of the Code of Civil Procedure was introduced in the California Senate. As originally worded, the bill read that the statute of limitations applicable to medical malpractice was "four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs." (2 Pacific L.J., *supra*, at p. 669.)

On April 17, 1970, at a hearing before the Senate Judiciary Committee, representatives of the California Trial Lawyers Association claimed that the bill as then worded would severely limit the right of recovery for the injured plaintiff whose delay in filing a claim was caused by fraudulent concealment by the medical practitioner of his own misconduct. (2 Pacific L.J., *supra*, at p. 669.) The bill was amended in committee to add a provision for tolling which read: " '[the] time limitation shall be tolled for any period during which such person [medical practitioner] has intentionally concealed any act, error, or omission upon which such action is based.' " (*Id.*, at p. 670; Sen. Bill No. 362, 1970 Reg. Sess., as amended Apr. 17, 1970.) The bill, as amended to include the tolling provision, passed committee to the floor of the state Senate.

The bill was further amended on the floor of the Senate on April 27, 1970, to read in its present form providing that "[t]his time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based which is known or through the use of reasonable diligence should have been known to him." (2 Pacific L.J., *supra*, at p. 670.)

The major thrust of the legislative activity leading to the adoption of Code of Civil Procedure section 340.5 was thus directed toward the ultimate four-year period of limitations (2 Pacific L.J., *supra*, at p. 668, fn. 41, citing letter from Senator Gordon Cologne, the bill's sponsor, to then Governor Ronald Reagan stating that the bill's purpose was to alleviate the need for malpractice insurers to maintain policy reserves past a four-year period). There is not the slightest hint in any of its history that the bill was intended drastically to affect the case law definition of "discovery" which could cause the period of limitations to

expire at a time prior to the four-year maximum. By providing that the statute of limitations begins to run from discovery or reasonable opportunity to discover the injury and not mentioning negligent cause of the damage, section 340.5 confers upon the medical practitioner a benefit of broader application of the statute of limitations than that previously in the law. The statute substitutes for the eliminated tolling provision for lack of discovery of negligent cause an obligation upon the medical practitioner to disclose facts relevant to negligent causes which he knows or should know.

We thus conclude that both the one-year and four-year provisions of Code of Civil Procedure section 340.5 are tolled for failure of the medical practitioner to disclose any act, error, or omission upon which the action for malpractice is based if the act, error, or omission is known to the practitioner or through the use of reasonable diligence should be known to him.

The foregoing constitutes that part of the Court of Appeal opinion with which I agree. I voted to grant a hearing in this case, however, to consider where the burden lies, on motion for summary judgment, to establish the facts which are to guide the trial court in determining whether a tolling of the statute is to be permitted. The majority fail to reach this issue.

Plaintiff insists that a defendant medical practitioner moving for summary judgment on the ground of the statute of limitations (Code Civ. Proc., § 340.5) must affirmatively establish by affidavit that he has not failed to disclose to the plaintiff any relevant facts. The defendant would thus have the burden of proving a negative in order to prevail under the tolling provisions of the code section.

This proposed new doctrine would conflict with the firmly established rule that "a litigant who relies on facts in order to avoid the bar of the statute of limitations bears the burden of proving such facts [citations]." (*De Vault* v. *Logan* (1963) 223 Cal.App.2d 802, 809 [36 Cal.Rptr. 145].) In *Mock* v. *Santa Monica Hospital* (1960) 187 Cal.App.2d 57, 64-65 [9 Cal.Rptr. 555], the court stated: "In order to show that his cause of action is not barred where the act of the defendant . . . occurred more than a year before the commencement of the action, the plaintiff must state in

his complaint 'when the discovery was made, the circumstances under which it was made, and facts to show that the plaintiff is not at fault for not having made an earlier discovery . . . .' " Although *Mock* refers to facts that must be pleaded in order to prevent dismissal by demurrer, a similar standard is appropriate to avoid summary judgment because the issue is the same, i.e., whether the action is barred by the statute of limitations. Witkin summarizes the present rule regarding section 340.5 as follows: "As in fraud and mistake cases . . . the plaintiff must make a sufficient showing of excusable late discovery of the facts; otherwise the statute runs in the usual manner." (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 317, p. 1160.)

By all recognized standards the defendants' moving papers in the case at bar in support of summary judgment were sufficient. Defendants asserted that the last contact plaintiff had with defendants was March 30, 1972, the date of her hospital discharge—more than one year prior to filing the action. The papers also show that plaintiff knew of the alleged negligent treatment since the time of the original surgery in March 1972. Defendants incorporated portions of plaintiff's deposition in which she admitted that when she left the hospital, immediately after the surgery, she "had decided to sue" her doctor. In this deposition plaintiff also stated that an orderly at the hospital had told her "They have done a mess with you" and advised her to report her treatment to the hospital director.

Plaintiff filed no affidavit opposing the motion for summary judgment, and never raised in the trial court the issue of the tolling of section 340.5. Consequently, the court's granting of summary judgment was proper.

Nonetheless, plaintiff urges reversal on the ground that Code of Civil Procedure section 437c compels the medical practitioner to bear the burden of negating any failure to disclose. This theory is premised on the insistence that plaintiff need not by her pleading anticipate affirmative matter that may be raised by the defendants. But the content of plaintiff's pleadings is not at issue; the question is whether plaintiff is required to raise the tolling provisions by counteraffidavits, not whether she must anticipate the defense in her pleadings. Moreover, it is settled that an opponent's failure to file counteraffidavits admits the truth of the movant's affidavit. (*Brewer* v. *Reliable Automobile Co.* (1966) 240 Cal.App.2d 173 [49 Cal.Rptr. 498].)

It is urged that although in general the plaintiff must prove that a statute of limitations is tolled, a different rule is necessary for section 340.5 because the statute has a "special character." Plaintiff contends that the statute of limitations is tolled by reason of the medical practitioner's failure to disclose acts, errors, or omissions: facts peculiarly within the knowledge of the defendant practitioner and by definition unknown to the plaintiff claiming medical malpractice unless disclosed.

The difficulty with this proposition is that it overlooks that plaintiff, by bringing suit, is claiming the defendant has committed negligent acts. The filing of suit per se indicates that someone, though perhaps not the defendant doctor, has disclosed to plaintiff the defendant's alleged negligence or the result thereof. Because suit is brought to recover for negligent acts of which she is then aware, or can then discover, the plaintiff does have the ability to raise the tolling provisions of section 340.5.

Finally, plaintiff relies upon the fifth paragraph of section 437c. That paragraph gives the trial court discretion to deny summary judgment on grounds of credibility in limited circumstances: "where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to such fact; or where a material fact is an individual's state of mind, or lack thereof, and such fact is sought to be established solely by the individual's affirmation thereof." It is urged that unless the burden of negating the elements of tolling is placed upon the medical practitioner, the discretion to deny summary judgment contained in section 437c is read out of the section. If the burden is upon the plaintiff-patient, the medical practitioner by silence precludes the court from exercising the discretion granted it.

The allegation is generally correct, but the proposed result does not necessarily follow. Plaintiff apparently assumes that unless the medical practitioner raises the tolling issue, the matter ends there. However, the summary judgment procedure anticipates the filing of affidavits and counteraffidavits. In fact, plaintiffs have affirmatively invoked the malpractice tolling provisions of their own accord ever since the tolling rule was first established by case law in *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908]. It is difficult to conclude that in normal practice

a reconciliation of sections 340.5 and 437c can be achieved only by shifting the burden to the defendant to negate tolling.

I would affirm the judgment, but, as indicated, not upon the rationale of the majority.