140 Nev., Advance Opinion 31

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| KEITH BOMAN,<br>Appellant,<br>vs.<br>MICHAEL ELKANICH, M.D., AN<br>INDIVIDUAL; AND BONE & JOINT<br>SPECIALISTS,<br>Respondents. | No. 86005-COA<br><br>FILED<br><br>APR 25 2024<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a district court order granting a motion to dismiss in a professional negligence action. Eighth Judicial District Court, Clark County; Veronica Barisich, Judge.

*Reversed and remanded.*

Hymanson & Hymanson and Ariana Caruso, Henry J. Hymanson, and Philip M. Hymanson, Las Vegas,
for Appellant.

McBride Hall and Heather S. Hall and Robert C. McBride, Las Vegas,
for Respondents.

---

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

## OPINION

By the Court, BULLA, J.:

In this opinion, we address whether irrefutable evidence existed to support the district court's determination of the accrual date in a

24-14527

professional negligence action, thereby warranting dismissal of the case pursuant to the applicable one-year statute of limitation.[1] Because we conclude that factual disputes remain regarding the relevant accrual date, the district court erred in dismissing the complaint as untimely as a matter of law under NRCP 12(b)(5). In reaching our decision, we apply the reasoning of *Massey v. Litton*, 99 Nev. 723, 728, 669 P.2d 248, 252 (1983), a summary judgment case, in the context of a motion to dismiss, to conclude that a patient is "fully entitled to rely on the physician's professional skill and judgment" while under the physician's care, which, in this case, precluded the district court from finding—as a matter of law—that irrefutable evidence existed to support its determined accrual date. Therefore, we reverse the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

In 2019, appellant Keith Boman, a board-certified cardiologist, experienced pain radiating from his spine. Boman initially saw Gary Flangas, M.D., who referred him to a pain management specialist for epidural injections. When his condition did not improve with the injections, Boman presented to respondents, Dr. Elkanich with Bone & Joint Specialists, in September 2020. Following a review of Boman's x-rays and MRI scans, Dr. Elkanich diagnosed Boman with severe lumbar spinal

---

[1]We note that recent amendments to NRS 41A.097 extend the statute of limitations for professional negligence claims to two years after the plaintiff discovers or should have discovered the injury, but only for claims arising on or after October 1, 2023. *See* Secretary of State, Statewide Ballot Question No. 3, § 8 (Nev., effective Nov. 23, 2004); NRS 41A.097(2)-(3); 2023 Nev. Stat., ch. 493, § 3. at 3023-24. As the claims in this case arose before October 1, 2023, these amendments do not affect this court's analysis.

stenosis.[2] Dr. Elkanich provided Boman with two treatment options: continue with epidural injections or undergo a laminectomy surgery from L2-S1.[3] Boman opted for surgery.

Approximately one month later, on October 19, 2020, Dr. Elkanich performed the laminectomy at MountainView Hospital. When Boman awoke from surgery, he had no feeling or movement in his left leg. Dr. Elkanich then informed Boman that his spinal cord dura was apparently "nicked," and then repaired, during surgery.[4] Dr. Elkanich also told Boman that the issues he was experiencing with "his left leg can occur and should improve over time."

After 24 hours of bed rest, Boman felt severe lower back pain at the site of his incision and had not regained feeling or movement in his left leg, except for slight movement in his toes. After three days, Boman was transferred to the rehabilitation facility at MountainView Hospital where he continued experiencing pain. At Boman's request, Dr. Elkanich ordered an MRI on October 24, which showed a "6 [by] 5.1-centimeter-deep

[2]"Spinal stenosis is the narrowing of one or more spaces within [the] spinal canal. [The] spinal canal is the tunnel that runs through each of the vertebrae in [the] spine." *Spinal Stenosis: What It Is, Causes, Symptoms & Treatment*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/ 17499-spinal-stenosis (last reviewed by a Cleveland Clinic medical professional on June 30, 2023).

[3]According to Boman's complaint, "[a] laminectomy is a procedure where all or part of the vertebral bone (lamina) is removed to help ease pressure on the spinal cord and offer relief from pain and neurological conditions."

[4]According to Boman's complaint, "[t]he spinal cord dura is a thick membrane of dense irregular connective tissue that surrounds the brain and spinal cord and protects the central nervous system."

hematoma that was crowding the nerve roots" around his lumbar and sacral region, called the cauda equina. Two days later, Dr. Elkanich performed surgery to remove the hematoma at MountainView Hospital. Following surgery, Boman's lower back pain lessened, but the feeling in his left leg did not return.

Boman returned to the rehabilitation facility, where he stayed for approximately two weeks. When he was discharged on November 13, Boman "was still experiencing significant leg weakness, numbness, and paralysis of his left foot." Thereafter, Boman began physical therapy three times a week for five months. He also continued to be treated by Dr. Elkanich. According to Boman, at his appointment on January 5, 2021, "Dr. Elkanich downplayed the continued post-surgery complications . . . Boman was experiencing by telling [him] that 'it's only been three months since surgery with your symptoms.'" On April 23, Dr. Elkanich referred Boman to Dr. Flangas for a second opinion. At his June 1, 2021, referral appointment, Dr. Flangas purportedly told Boman, for the first time, that his "symptoms were consistent with cauda equina syndrome with exacerbation from the post-operative hematoma."[5] Boman claims it was at this appointment that he was placed on inquiry notice as to Dr. Elkanich's potential professional negligence.

Within one year after his appointment with Dr. Flangas, on June 1, 2022, Boman filed a complaint against Dr. Elkanich and

---

[5]Cauda equina syndrome is the compression of the cauda equina nerve roots. *Cauda Equina Syndrome: Symptoms, Treatment & Causes*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/22132-cauda-equina-syndrome (last reviewed by a Cleveland Clinic medical professional on Nov. 22, 2021). "Compressed cauda equina nerves can cause pain, weakness, incontinence and other symptoms." *Id.*

Bone & Joint Specialists, alleging six claims for relief, including professional negligence; negligent hiring, training, supervision, and/or credentialling/privileging; and corporate negligence/vicarious liability.[6] Dr. Elkanich and Bone & Joint Specialists moved to dismiss the complaint, arguing that Boman's complaint was untimely because he filed it after the one-year statute of limitations under NRS 41A.097 (2004) had expired.[7] In support of their position, respondents assert that the statute of limitations accrued no later than the date Boman was discharged from the hospital in 2020 because, at that time, Boman was placed on inquiry notice of his potential claims against Dr. Elkanich, as he had learned of the nicked dura and hematoma and experienced neurological symptoms.

Following a hearing, the district court found that Boman was on inquiry notice of his legal injury on October 19, 2020, when Dr. Elkanich stated that he nicked the dura, or on October 24, 2020, at the latest, when Boman underwent an MRI at his request that showed the presence of a hematoma requiring surgery. Therefore, the district court determined that Boman filed his June 1, 2022, complaint well beyond the applicable one-year statute of limitations from the date of accrual in October 2020 and accordingly dismissed it.[8] Boman timely appealed.

---

[6]Boman also sued MountainView Hospital, Sunrise Health System, and HCA Healthcare, Inc. But those parties and the claims against them were dismissed below and are not before this court on appeal.

[7]The initial motion to dismiss we are considering on appeal was filed by MountainView Hospital, Sunrise Health System, and HCA Healthcare, Inc., and later joined by Dr. Elkanich and Bone & Joint Specialists.

[8]The district court denied a different motion to dismiss filed by respondents, but that issue is not before us in this appeal.

## ANALYSIS

On appeal, Boman argues that the district court erred in its interpretation of the terms "injury" and "discovers" set forth in NRS 41A.097. Boman contends that if the court had properly interpreted "injury" to mean a legal injury and interpreted "discovers" to mean having inquiry notice of a negligence cause of action, then the court could not have determined that Boman had discovered his legal injury on October 24, 2020, at the latest. Boman specifically argues that he was not placed on inquiry notice of his potential professional negligence claims against respondents until June 1, 2021, when he presented to Dr. Flangas for a second opinion. Therefore, Boman claims that he timely filed his complaint within one year after the accrual date.

In turn, respondents argue that the district court properly found that Boman was first placed on inquiry notice of a professional negligence claim against Dr. Elkanich in October 2020 when he became aware of his surgical injuries and experienced symptoms, rather than at his June 1, 2021, visit with Dr. Flangas. Therefore, respondents argue that, because Boman was on inquiry notice as of October 2020, the district court correctly dismissed his complaint because the one-year statute of limitations had expired when Boman filed his complaint on June 1, 2022.

"A district court's order granting a motion to dismiss under NRCP 12(b)(5) is reviewed de novo." *Nelson v. Burr*, 138 Nev., Adv. Op. 85, 521 P.3d 1207, 1210 (2022). A "complaint should be dismissed only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). This rigorous standard requires this court to recognize all factual allegations in the plaintiff's complaint as true and draw all inferences in favor of the moving

party. *Id.* at 227-28, 181 P.3d at 672; *see also Nelson*, 138 Nev., Adv. Op. 85, 521 P.3d at 1210. "[A] court can dismiss a complaint under NRCP 12(b)(5) 'if the action is barred by the statute of limitations.'" *Engelson v. Dignity Health*, 139 Nev., Adv. Op. 58, 542 P.3d 430, 436 (Ct. App. 2023) (quoting *Bemis v. Est. of Bemis*, 114 Nev. 1021, 1024, 967 P.2d 437, 439 (1998)).

NRS 41A.097(2) provides that "an action for injury . . . against a provider of health care may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first." "'[I]njury' as used in NRS 41A.097[ ] means legal injury." *Massey*, 99 Nev. at 726, 669 P.2d at 251. A legal injury includes "*both* the 'physical damage' *and* the '[professional] negligence causing the damage.'" *Engelson*, 139 Nev., Adv. Op. 58, 542 P.3d at 437 (alteration in original). "[A] plaintiff discovers his injury when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on *inquiry notice* of his cause of action." *Winn v. Sunrise Hosp. & Med. Ctr.*, 128 Nev. 246, 252, 277 P.3d 458, 462 (2012) (internal quotation marks omitted). "[A] person is put on 'inquiry notice' when he or she should have known of facts that 'would lead an ordinarily prudent person to investigate the matter further.'" *Id.* (quoting *Inquiry Notice, Black's Law Dictionary* (9th ed. 2009)). "[T]hese facts need not pertain to precise legal theories the plaintiff may ultimately pursue, but merely to the plaintiff's general belief that someone's negligence may have caused his or her injury." *Id.* at 252-53, 277 P.3d at 462. "The discovery may be either actual or presumptive, but must be of both the fact of damage suffered and the realization that the cause was the health care provider's negligence." *Massey*, 99 Nev. at 727,

669 P.2d at 251. The accrual date is generally a question of fact to be decided by the jury; however, the district court may determine the accrual date as a matter of law when the evidence is irrefutable. *Winn*, 128 Nev. at 251, 277 P.3d at 462.

In *Massey*, following hip replacement surgery, the plaintiff experienced a loss of sensation in her left leg and foot. 99 Nev. at 724, 669 P.2d at 249. The plaintiff's treating physician "told [her] that it was not unusual or permanent and that physical therapy would result in an improvement." *Id.* The plaintiff continued under the treating physician's care for many months, and during this time, the physician maintained that the condition would improve. *Id.* However, six months after the surgery, the physician changed course "when he expressed his inability to explain [plaintiff's] condition." *Id.*

The plaintiff subsequently sued the physician, who moved to dismiss her complaint on the ground that it was untimely, asserting that the statute of limitations started running on the date that the plaintiff discovered her symptoms. *Id.* at 725, 669 P.2d at 250. The Nevada Supreme Court disagreed, noting that the patient-plaintiff "commended herself to [the physician's] care and continuing treatment" and that a "patient is fully entitled to rely upon the physician's professional skill and judgment while under his care, and has little choice but to do so." *Id.* at 728, 669 P.3d at 252 (quoting *Sanchez v. S. Hoover Hosp.*, 553 P.2d 1129, 1135 (Cal. 1976)). The supreme court stated that "during the continuance of this professional relationship, which is fiduciary in nature, the degree of diligence required of a patient in ferreting out and learning of the negligent causes of his condition is diminished." *Id.* (quoting *Sanchez*, 553 P.2d at 1135). Thus, the supreme court held that "it [was] not clear" when the plaintiff was, or

should have been, aware of her cause of action during the time she remained under the physician's care. *Id.* On that basis, and upon treating the order granting the motion to dismiss as one for summary judgment because the district court considered matters outside the pleadings, the supreme court concluded that summary judgment was inappropriate. *Id.* at 742 n.1, 728, 669 P.2d at 249 n.1, 252.

*Massey* was resolved on a summary judgment basis, and therefore the district court considered evidence regarding whether the plaintiff had discovered his legal injury more than two years (the statute of limitations at the time) before filing the complaint. *Id.* at 728, 669 P.2d at 252; *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005) (setting forth the summary judgment standard and providing that a court is to consider "the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court" when ruling on a summary judgment motion); *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602-03, 172 P.3d 131, 134 (2007) (providing that, when the party that bears the burden of persuasion at trial is the nonmoving party in a request for summary judgment, they "must transcend the pleadings and, by affidavit or other admissible evidence, introduce specific facts that show a genuine issue of material fact" to avoid summary judgment). Although the summary judgment standard does not apply here, as this case was resolved on a motion to dismiss, and the district court did not consider evidence in making its decision, *Massey* is still instructive. Its legal holdings concerning a patient's ability to rely on a treating physician's advice during the time of treatment and the diminished diligence required of a patient to discover their legal injury during this time apply equally

when considering whether to grant a dismissal or summary judgment. *See Massey*, 99 Nev. at 728, 669 P.2d at 252.

Here, in considering whether the district court erred in granting a dismissal, we take Boman's allegations as true and draw every inference in Boman's favor. *See Buzz Stew*, 124 Nev. at 227-28, 181 P.3d at 672. Applying the rules promulgated in *Massey*, we conclude that the district court erred in finding that, as a matter of law, Boman was on inquiry notice of his legal injury by October 24, 2020, at the latest. Although Dr. Elkanich informed Boman that the dura was nicked during surgery and repaired, and surgically addressed the hematoma, Dr. Elkanich also advised Boman that the issues he experienced in his leg could occur following surgery and should improve over time. Additionally, three months after the surgery, Dr. Elkanich purportedly downplayed Boman's neurological complications involving his left leg, again suggesting that he would improve. Because Boman was under Dr. Elkanich's continued care, he was fully entitled to rely upon Dr. Elkanich's skill and judgment, and the degree of diligence required of him to learn of any alleged negligence was diminished.[9] *See Massey*, 99 Nev. at 728, 669 P.2d at 252; *see also Engelson*, 139 Nev., Adv. Op. 58, 542 P.3d at 439 (determining there was not irrefutable evidence that the plaintiff had inquiry notice because the record

---

[9]Respondents further argue that this court should consider Boman's experience as a cardiologist as irrefutable evidence that he knew or should have known about his injury as of October 24, 2020, at the latest. However, respondents cite no authority to support their position that, because Boman is a doctor, as a patient he was not entitled to rely on the information Dr. Elkanich provided him regarding his treatment and diagnosis. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330, n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not consider an argument that is not cogently argued or lacks the support of relevant authority).

did not state that the patient or plaintiff "were actually informed by the hospital staff that her condition had in fact worsened and, more specifically, was the result of professional negligence").

Therefore, at this stage of the proceedings, irrefutable evidence does not exist to support that Boman was on inquiry notice of his legal injury either on October 19, 2020, when he learned about the nicked dura and his leg paralysis, or on October 24, 2020, when he learned about the hematoma because of his ongoing physician-patient relationship with Dr. Elkanich. *See Winn*, 128 Nev. at 251, 277 P.3d at 462. Taking the allegations in the complaint as true and all inferences in Boman's favor, as we must, Boman was unaware of the possibility of his continuing health issues being related to Dr. Elkanich's alleged negligence until he sought a second opinion from Dr. Flangas on June 1, 2021, at which time he learned of his diagnosis of cauda equina syndrome and the effect the post-operative hematoma had on his outcome. Thus, at this stage of the proceedings, there is no irrefutable evidence that the statute of limitations had expired when Boman filed his complaint, and factual disputes remain regarding the accrual date of the statute of limitations on Boman's claims.

*CONCLUSION*

Taking all factual inferences in favor of Boman in considering whether dismissal of his complaint was appropriate under NRCP 12(b)(5) and applying the reasoning set forth in *Massey*, we conclude that irrefutable evidence does not support, that as of October 24, 2020, at the latest, Boman was placed on inquiry notice of his claims against Dr. Elkanich. Indeed, Boman's degree of diligence was diminished while he remained under Dr. Elkanich's care during this period, particularly when Boman alleges that Dr. Elkanich continually reassured him that his post-operative condition would improve. Because factual disputes remain regarding the relevant

accrual date, the district court erred in dismissing Boman's complaint as being untimely as a matter of law under NRCP 12(b)(5). And we note that if genuine disputes regarding inquiry notice remain following discovery, then the determination of the accrual date is a question of fact for the jury or trier of fact to resolve. *Winn*, 128 Nev. at 251, 277 P.3d at 462.[10] Accordingly, we reverse and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Westbrook

---

[10]Insofar as the parties have raised arguments that are not specifically addressed in this opinion, we have considered the same and conclude that they either do not present a basis for further relief or need not be reached given the disposition of this appeal.

COURT OF APPEALS
OF
NEVADA

(O) 1947B