[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1154 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1155 
 OPINION
Appellant Kevin McOwen filed a medical malpractice action on March 25, 2004, against Caremore Medical Group, Peggy Salazar (not parties to this appeal) and a number of Doe defendants. On August 8, 2005, appellant amended his complaint by substituting respondent Mark Grossman, M.D., for one of the Does. The trial court granted respondent's motion for summary judgment on the ground that, as to respondent, the statute of limitations barred the action. We conclude that the trial court erred in ruling that the statute of limitations bars the action and reverse the judgment.
 FACTS
The operative facts are not disputed, unless otherwise noted.
Appellant stepped on a nail on February 1, 2003. He first received medical care for this injury on February 3, 2003, from Peggy Salazar, a nurse with Caremore, who was treating appellant's diabetes. Salazar continued to treat the foot by applying ointment. This proved inadequate and appellant was referred to respondent, who is a vascular surgeon, on March 20, 2003, with what appellant characterizes as a "raging infection" of his foot.
Appellant was referred to respondent for evaluation of "an infected sinus of the right fifth metatarsal." Respondent saw appellant twice, i.e., on March 20 and March 28, 2003. The records of the initial consultation state that there "is a likelihood that [appellant] will lose his toe and that he has a `limb-threatening disease.'" Respondent ordered an arterial Doppler test to determine the vascular sufficiency of appellant's lower extremity. The results of this test are disputed. Respondent claims that the test showed that blood flow in the small vessels of appellant's feet were a problem; appellant disputes that the test report includes this finding.
Respondent concluded that an arterial bypass to increase blood flow could not be done, in view of appellant's "small vessel problem." A further test *Page 1156 
erformed on March 27, 2003, showed osteomyelitis in appellant's right foot. Respondent saw appellant for the second and final time on March 28, 2003, when respondent discussed the test results with appellant and the condition of appellant's right foot. Respondent referred appellant to an infectious disease specialist, Dr. Petreccia.
Appellant lost his toe due to gangrene on April 2, 2003, and his right leg below the knee was amputated in July 2003.
As noted, the complaint was filed on March 25, 2004; respondent's deposition was taken on November 15, 2004.
Appellant contends that he did not learn of respondent's role in causing appellant's injuries until March 7, 2005, when Caremore supplemented its earlier discovery responses. An amended supplemental response by Caremore served on March 9, 2005, stated that Caremore "identifies Marc Grossman, M.D. and David Petreccia, M.D. as individuals who may have contributed to the injuries sustained by plaintiff."[1] The basis of this supple-mental response appears to have been the opinion of Caremore's expert, Dr. Cossman, who opined that respondent should have ordered an angiogram, and not a Doppler test, that an angiogram would have disclosed if appellant was "reconstructible," and that if appellant had a successful "reconstruction," his leg would have been saved. As appellant
points out in a footnote in his opening brief, "Grossman wouldn't be in this lawsuit if it weren't for Caremore's
contentions." Appellant took Dr. Cossman's deposition on March 21, 2005, when he gave the opinion we have set forth above. It may be assumed that it was this opinion that formed the basis for the amended supplemental response filed by Caremore that identified respondent as an individual "who may have contributed to the injuries sustained by plaintiff."
The record contains a declaration under penalty of perjury by appellant personally that the "first time I was made aware of any facts that may have raised a suspicion of wrongdoing with respect to [respondent] was after the deposition of defendant CAREMORE MEDICAL GROUP and PEGGY SALAZAR'S expert, David A. Cossman, M.D. Prior to that time, no such facts were made aware to me [sic] concerning the same."
Respondent was named as a defendant by an amendment filed on August 8, 2005. *Page 1157 
In ruling on respondent's motion for summary judgment, the trial court found that it was undisputed that appellant was treated by respondent in March 2003, and that appellant's leg was amputated in July 2003. The court concluded: "The Court finds, as a matter of law, that that event [amputation] put plaintiff on notice of his claim, sufficient to trigger the statute of limitations. See Sanchez v. South Hoover Hosp. (1980) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129]. 
Plaintiff knew he was treated by the moving defendant [respondent], knew of his identity and the subsequent amputation long before the Doe amendment was filed. He also deposed the moving defendant, which testimony presumably provided additional facts in suppor [sic] of his claim."
 DISCUSSION
1. The Issue Is Whether Appellant Was Ignorant of Facts Giving Rise to a Cause of Action Against Respondent
Appellant's naming of Doe defendants, and his subsequent amendment to substitute respondent for one of the Does, is governed by Code of Civil Procedure section 474 (section 474).[2] As we explain below, section 474 is not to be confused with the statute of limitations.
The rule that applies to this case has been stated inGeneral Motors Corp. v. Superior Court (1996)48 Cal.App.4th 580, 587-588 [55 Cal.Rptr.2d 871]: "When a lawsuit is first initiated after the applicable period of limitations has expired and the plaintiff is entitled to claim the benefit of a delayed discovery rule (that is, when for one reason or another the plaintiff is granted an extended period within which to file suit), the relevant inquiry is what the plaintiffknew or, through the exercise of due diligence,reasonably could have discovered at an earlier date. . . . But where, as here, a lawsuit is initiated within the applicable period of limitations against someone (that is, almost anyone at all) and the plaintiff has complied with section 474 by alleging the existence of unknown additional defendants, the relevant inquiry when the plaintiff seeks to substitute a real defendant for one sued fictitiously iswhat facts the plaintiff actually knew at the time the original complaint was filed." *Page 1158 
A plaintiff can avail himself or herself of section 474 if the plaintiff is ignorant of facts that give rise to a cause of action against a person who is otherwise known to the plaintiff. "In keeping with th[e] liberal interpretation of section 474, it is now well established that even though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name), the plaintiff is `ignorant' within the meaning of the statute if he lacks knowledge of that person's connection with the case or with his injuries." (General MotorsCorp. v. Superior Court, supra, 48 Cal.App.4th at pp. 593-594.) As put by another court: "The phrase `ignorant of the name of a defendant' is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant." (Fuller v.Tucker (2000) 84 Cal.App.4th 1163, 1170 [101 Cal.Rptr.2d 776]; see generally 4 Witkin, Cal. Procedure (4th ed. 1997) §§ 445, 446, pp. 540-545.)
In concluding that the amputation of appellant's leg put him on notice of his claim "sufficient to trigger the statute of limitations," the trial court committed the same error that was committed by the trial court in Fuller v. Tucker,supra, 84 Cal.App.4th 1163. In Fuller, as in the case at bar, the medical malpractice complaint naming Doe defendants was filed within the statute of limitations. Dr. tucker was substituted for one of the Does, as respondent was in this case, after the statute of limitations had run. (Id.
at p. 1167.) Citing Sanchez v. South Hoover Hospital
(1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129], as did the trial court in this case, as well as Jolly v. Eli Lilly Co. (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923], the trial court in Fuller concluded that the statute of limitations had run. (Fuller, supra, at p. 1168.)
The error in this case, as it was in Fuller v.Tucker, is in identifying the issue in terms of the statute of limitations. The issue, however, is not when the cause of action against the newly named defendant accrued, i.e., whether the statute of limitations bars the action against respondent. This cannot be the issue since the complaint was filed within the statute of limitations and because the complaint, asfiled, named Doe defendants. The statute of limitations is not at issue under these circumstances. As the court put it inFuller: "Fuller timely filed her initial complaint. However, after the statute of limitations had expired, Fuller brought in Dr. Tucker as a Doe defendant. In such situations, Code of Civil Procedure section 474 permits *Page 1159 
plaintiffs to bring in defendants if the requirements of section 474 are met. If so, that defendant is considered a party to the action from its commencement." (Fuller v. Tucker,supra, 84 Cal.App.4th at pp. 1169-1170.)
Whether "the requirements of section 474 are met" (Fullerv. Tucker, supra, 84 Cal.App.4th at p. 1170) is different from deciding when the cause of action accrued for the purposes of the statute of limitations. If the identity of the Doe defendant is known, but at the time of the filing of the complaint the plaintiff did not know facts that would cause a reasonable person to believe that liability is probable, the requirements of section 474 are met. "Section 474 allows a plaintiff in good faith to delay suing particular persons as named defendants until he has knowledge of sufficient facts to cause a reasonable person to believe liability is probable." (Dieckmann v. Superior Court (1985) 175 Cal.App.3d 345,363 [220 Cal.Rptr. 602].) "The fact that the plaintiff had the means to obtain knowledge is irrelevant." (General MotorsCorp. v. Superior Court, supra, 48 Cal.App.4th at p. 594.) "In short, section 474 does not impose upon the plaintiff a duty to go in search of facts she does not actually have at the time she files her original pleading." (Id. at p. 596.)
A medical malpractice action must be commenced three years after the date of the injury "or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc. § 340.5.) While reasonable diligence may be material to the determination of the accrual of a cause of action, reasonable diligence is not germane to determining whether a Doe amendment was timely. (Fuller v. Tucker,supra, 84 Cal.App.4th 1163, 1170-1171.) Thus, the trial court's conclusion that the amputation of appellant's leg put him on notice and that, inferentially, appellant should have exercised due diligence based on that fact and named respondent earlier than he did, misses the mark.[3] The fact is that appellant filed the complaint in March 2004, well within one year after the amputation that took place in July 2003.
2. It Is a Question of Fact Whether, at the Time of the Filing of the Complaint, Appellant Knew of the Theory Under Which Respondent Could Be Liable
Caremore's expert Dr. Cossman opined that respondent fell below the standard of care because he ordered the wrong test. According to Dr. Cossman, *Page 1160 
respondent should have ordered an angiogram and not a Doppler test. Dr. Cossman was very specific in criticizing the Doppler test, stating that respondent "relied on the Doppler test, which you don't do in anybody, but particularly a diabetic, because it does not provide any kind of essential information, And the only way you can tell if a patient is reconstructible is with a formal angiogram."
There is nothing in the record as it is presently constituted that suggests that this theory of liability, which is quite specific in focusing on the test ordered by respondent inMarch 2003, was known to appellant prior to March 2005, when Caremore first indicated in its amended supplemental discovery response that respondent may have contributed to appellant's injuries. There is, however, appellant's statement that he had no suspicion of wrongdoing by respondent prior to Dr. Cossman's deposition. Given these circumstances, at this point it is a question of fact whether, at the time of the filing of the complaint, appellant knew facts that indicated that respondent ordered the wrong test in March 2003, and that he should have ordered an angiogram.
Respondent contends that appellant knew of respondent, and of course also knew that respondent had treated him in March 2003. This is not the issue. The question is whether appellant knew facts when he filed the complaint that indicated that respondent should have ordered an angiogram in March 2003, and not a Doppler test.
Respondent relies on Woo v. Superior Court (1999)75 Cal.App.4th 169 [89 Cal.Rptr.2d 20] in contending that, as inWoo, appellant was not in fact ignorant of respondent's name and that, for this reason, amending to add respondent in lieu of a Doe defendant was improper. This is too narrow a reading of Woo. While the plaintiff in Woo
offered a number of inconsistent versions about her knowledge of the name (and existence) of Dr. Woo, it was shown by her deposition testimony that not only did she know Dr. Woo's name and identity, she was aware of the specific role that he played in bringing about the injuries that she sustained.[4] By contrast, in this case it was only when Dr. Cossman surfaced with his "wrong test" theory in March 2005 that appellant learned of the role respondent allegedly played in bringing about appellant's injuries. *Page 1161 
Citing Dover v. Sadowinski (1983) 147 Cal.App.3d 113
[194 Cal.Rptr. 866], respondent contends that a "sworn statement by a plaintiff claiming ignorance does not in itself require denial of a motion for summary judgment based upon a violation of section 474. Otherwise, the rule against `feigned' ignorance could be easily avoided by a plaintiff attempting to prevent [an] adverse judgment."
Dover v. Sadowinski does not support this overly broad statement. Dr. Sadowinski was in charge of the decedent's care at the hospital, where she was between September 2 and September 25, 1979, when she expired. This was known to the plaintiff, the decedent's husband, who met with Dr. Sadowinski several times. Death was due to toxicity of a certain type that should have been noted by the physician in charge, Dr. Sadowinski. The appellate court concluded that the plaintiff "knew of the facts giving rise to the cause of action." (Dover v. Sadowinski,supra, 147 Cal.App.3d at p. 116.) Indeed, during the hearing on the motion for summary judgment, when challenged by the trial court about Dr. Sadowinski, counsel acknowledged that it was known that Dr. Sadowinski was "involved," but not how "deeply" he was "involved." (Id. at p. 117, italics omitted.) The appellate court rejected the contention that in order to name a defendant, "the plaintiff must be aware of each and every detail concerning that person's involvement." (Id. at pp. 117-118.) The court concluded that the claimed lack of knowledge "is not real, but is in fact feigned." (Id. at p. 118.)
Dover v. Sadowinski conforms with the principle that admissions or concessions made during the course of discovery govern and control over contrary declarations prepared and filed in opposition to the motion for summary judgment. (Visuetav. General Motors Corp. (1991) 234 Cal.App.3d 1609, 1613
[286 Cal.Rptr. 402].) To use respondent's phrase, "a sworn statement by a plaintiff claiming ignorance" filed in opposition to a motion for summary judgment is subjected to the usual rules, including the one referred to in the preceding sentence. However, where the "sworn statement by a plaintiff claiming ignorance" is not contradicted by previous admissions or concessions, the rule is that facts alleged in the declaration opposing the motion must be accepted as true for the purposes of the summary judgment motion. (Singleton v. United StatesGypsum Co. (2006) 140 Cal.App.4th 1547, 1558 [45 Cal.Rptr.3d-597].) There is no special exception to this rule in cases arising under section 474. At this point, there is nothing in the record that contradicts appellant's declaration that he was not aware of any wrongdoing by respondent before Dr. Cossman's deposition was taken. *Page 1162 
Respondent contends that appellant, his attorney and his medical experts reviewed the records and that the facts shown in the record "were sufficient to indicate a claim of negligence against respondent." At this point, however, there is nothing to suggest that the specific theory of liability espoused by Dr. Cossman, i.e., the ordering of the wrong test, was suggested by anyone at any time earlier than March 2005. While it is perfectly possible that there is such evidence, at this point the only fact of record is appellant's declaration that he was not aware of any wrongdoing by respondent before Dr. Cossman's deposition was taken.
In this connection, we disregard appellant's claim, set forth in his opening brief, that during respondent's deposition taken by Caremore in November 2004 there was nothing to suggest that, at that time, Caremore contended that respondent caused appellant's injuries. Statements of fact that are not supported by references to the record are disregarded by the reviewing court. (Yeboah v. Progeny Ventures, Inc. (2005)128 Cal.App.4th 443, 451 [27 Cal.Rptr.3d 150]; Cal. Rules of Court, rule 8.204(a)(1)(C).) For the same reason, we disregard appellant's claim, that is also not supported by any references to the record, that, prior to March 2005, appellant's experts testified that Caremore and Salazar, and inferentially not respondent, caused appellant's injuries.
Finally, we disagree with respondent that appellant was not prejudiced by the ruling on respondent's motion for summary judgment because appellant's experts did not think that respondent is liable and that, for this reason, respondent would be entitled to a nonsuit at trial. Appellant named respondent as a defendant, opposed his motion for summary judgment and appealed from the adverse decision on that motion. While appellant can always change his mind, appellant's current course of conduct indicates without equivocation that he intends and hopes to recover judgment against respondent.
We have explained why, based on the record as presently constituted, it is a question of fact whether, at the time appellant filed the complaint, he knew facts to cause a reasonable person to believe that respondent was probably liable. While the presence of a triable issue of fact alone is sufficient to reverse the summary judgment, we also note that, independently of this ground, the trial court's error in granting summary judgment based on the statute of limitations also requires that we reverse the judgment. *Page 1163 
 DISPOSITION
The judgment is reversed. Appellant is to recover his costs on appeal.
Rubin, Acting P. J., and Boland, J., concurred.
[1] Appellant's reference to March 7, 2005, in his brief (see text, ante) should be to a date in March after March 9, 2005.
[2] Section 474 provides in pertinent part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly."
[3] Sanchez v. South Hoover Hospital, supra,18 Cal.3d 93, cited by the trial court, deals with the accrual of a cause of action for medical malpractice. For the reasons set forth in the text, the case at bar, unlike Sanchez, does not present the issue of the accrual of a cause of action.
[4] "Here Zarabi [the plaintiff] testified in her deposition that in May 1996 Barone told her and her husband that in February 1996 Woo misinterpreted her mammogram and incorrectly placed the hookwire. By Zarabi's own testimony she acknowledged she had actual knowledge of Woo's identity and hisparticipation in her claimed injuries prior to the time shefiled her complaint." (Woo v. Superior Court, supra,75 Cal.App.4th 169, 177-178, italics added.) Dr. Woo was named in a complaint filed in February 1998; the court concluded that the one-year statute began to run in May 1996. *Page 1164