Filed 8/18/25  Haslam v. Tate CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TAMARA HASLAM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MATTHEW TATE et al.,<br><br>    Defendants and Respondents. | F087722<br><br>(Super. Ct. No. VCU291016)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Jeremy M. Dobbins for Plaintiff and Appellant.

Salinas Law Group, Inc., Richard S. Salinas, Stacy R. Lucas, and Clare E. Demera for Defendants and Respondents Matthew Tate, P.A., Goodwill Chinonye Princewill, P.A., and CEP America – California.

La Follette, Johnson, DeHaas, Fesler & Ames, John C. Lender and Robert J. Iacopino for Defendant and Respondent Terry Nelson, D.P.M.

-ooOoo-

# INTRODUCTION

Appellant Tamara Haslam's left leg was amputated below the knee following a two-month course of medical treatment for a broken foot. A little over one year following the amputation, she filed suit for medical negligence against medical providers involved in her initial medical care, as well as Does 1 through 10. Approximately one year later, she amended her complaint to name respondents Matthew Tate, P.A.; Goodwill Chinonye Princewill, P.A.; Terry Nelson, D.P.M.; and CEP America – California (CEP), among others, in place of several Does.

The trial court granted summary judgment in favor of Tate, Princewill, and CEP on statute of limitations grounds after determining Haslam's amendment of the complaint did not satisfy the requirements of Code of Civil Procedure[1] section 474 and therefore did not relate back to the date of the initial filing. The trial court granted summary judgment in favor of Nelson on statute of limitations grounds after determining the initial complaint was filed outside the statute of limitations set forth in section 340.5.

On appeal, Haslam argues her claims against Tate are not time-barred because the statute of limitations was tolled pursuant to section 351 while Tate was out of state. She argues her claims against Princewill are not time-barred because they relate back to the date of filing of the initial complaint pursuant to section 474. She argues her claims against Nelson are not time-barred because the limitations period was extended when she sent a notice of intent to sue within the last 90 days prior to the expiration of the limitations period. (§ 364, subd. (d).) She further argues her claims against Nelson relate back to the initial filing pursuant to section 474.

We affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

# FACTUAL BACKGROUND

On January 18, 2021, Haslam presented to the emergency room at Adventist Health Tulare complaining of left foot pain following a fall at home. She was evaluated by Tate, who noted no sign of infection. X-rays of her foot and ankle were taken that day and reviewed by William Burge, M.D., who noted fractures at the base of the first, second, and third metatarsals. The fractures appeared to be acute/subacute and there was soft tissue swelling of the foot and ankle. Tate ordered Haslam fitted for a short-leg posterior splint and discharged her with directions to follow up with her podiatrist.

Haslam returned to the emergency room on February 8, 2021,[2] with complaints of shortness of breath, aches, headache, and cough that began four days prior. She also expressed concern regarding a possible infection of her left foot. Princewill examined Haslam and noted no signs of infection or sepsis. X-rays taken on February 8, 2021, revealed a Lisfranc injury with fractures at the bases of the second, third, and fourth metatarsals, with lateral subluxation or dislocation of the bones. There was also dorsal displacement of several metatarsal bases. Haslam was diagnosed with viral syndrome and foot fracture and discharged home.

On February 18, 2021, Haslam was seen by Nelson for treatment. Nelson noted that Haslam had been walking on her splint since her initial injury. He noted that her splint had a hole at the back of her leg. Nelson provided Haslam with a surgical shoe, ordered X-rays, and advised her to follow up in one week.

X-rays were taken on March 2, 2021, and revealed fractures/dislocations at the first, second, third, fourth, and fifth metatarsals. There was a severely comminuted fracture involving the base of the first metatarsal with displacement and fragmentation of the tarsal bones. The second, third, fourth, and fifth metatarsals were displaced laterally

---

[2] Haslam saw other providers at other facilities and on other dates throughout the course of her treatment. However, as those visits are not relevant to the statute of limitations issue before us, we do not discuss them.

at the bases.  Several of the tarsal bone fragments were displaced in the plantar direction and the entire architecture of the midfoot had been disrupted.

Haslam returned to Nelson on March 4, 2021.  He noted her X-rays had revealed a dislocation Lisfranc fracture around the first metatarsal joint, with a Charcot reaction. Nelson ordered a walking boot and prescribed doxycycline for possible cellulitis.  He noted that, due to the magnitude of the fracture and the Charcot deformity, it was highly likely she would require surgery and a foot amputation in the future.  Once Haslam was out of the acute phase of Charcot and her blood sugar levels returned to a safe level for surgery, Nelson's plan was to move forward with a possible open reduction and internal fixation.

Haslam alleges that, on March 17, 2021, her left leg was amputated below the knee as a result of sepsis, cellulitis, and an infection that developed in her left foot.

### PROCEDURAL HISTORY

On March 24, 2022, Haslam filed suit for general and medical negligence against Adventist Health Tulare, Tate, Burge, and Does 1 through 10.  Does 1 through 5 were described as "agents or employees of other named defendants [who] acted within the scope of that agency or employment."  Does 6 through 10 were described as "persons whose capacities are unknown to plaintiff."

Adventist Health Tulare filed an answer on May 3, 2022.  Burge filed an answer on May 4, 2022.

On January 20, 2023, Haslam filed a request for dismissal without prejudice as to Tate.  The dismissal was entered the same day.

On March 2, 2023, Haslam filed a request for dismissal with prejudice as to Adventist Health Tulare.  The dismissal was entered the same day.

On April 7, 2023, Haslam amended the complaint by substituting Vituity – EM Santa Monica, PC as Doe 1; Princewill as Doe 2; and Tate as Doe 3.  On April 24, 2023, she amended the complaint to substitute Nelson as Doe 4.

On April 25, 2023, Haslam filed a request for dismissal without prejudice as to Vituity – EM Santa Monica, PC. The dismissal was entered the same day.

On April 26, 2023, Haslam amended the complaint to substitute CEP as Doe 5.

Princewill and CEP filed an answer on May 25, 2023. Nelson filed an answer on May 30, 2023.

Princewill and CEP moved for summary judgment on September 1, 2023. Tate filed an answer on September 8, 2023. Subsequently, on September 12, 2023, Princewill and CEP filed an amended motion for summary judgment, now joined by Tate, arguing the claims against them were time-barred by section 340.5.[3] Specifically, they argued Haslam's amendment to substitute Princewill, Tate, and CEP in place of Doe defendants did not meet the requirements of section 474 to relate back to the date of the original complaint. Because Haslam was aware of these defendants' identities and the basic facts constituting claims against them at the time of the original filing, she could not avoid the statute of limitations bar by adding them later as Doe defendants.

Separately, Nelson moved for summary judgment on October 23, 2023. He similarly argued Haslam's claims against him were time-barred by section 340.5.[4] He asserted that his last visit with Haslam was on March 4, 2021, and Haslam became aware of the basis for a cause of action against him on that date, more than one year before the complaint was filed on March 24, 2022. Furthermore, he argued that, because Haslam had knowledge of Nelson's identity at the time the complaint was filed, section 474 did not apply.

---

[3] They also argued they were entitled to summary judgment on the merits of the claims. Because the trial court did not address this argument, we do not include it in our summary.

[4] As with Princewill, Tate, and CEP, Nelson argued he was entitled to summary judgment on the merits of Haslam's claims. Once again, the trial court did not address this argument and we therefore do not summarize it.

Haslam filed a joint opposition to the two motions for summary judgment on November 21, 2023, arguing her claims were not time-barred.

The court granted the motion for summary judgment brought by Tate, Princewill, and CEP on December 6, 2023.  As to Tate, the court noted Tate was a defendant in the original complaint filed March 24, 2022, which alleged Tate failed to properly treat Haslam and failed to order proper tests.  Additionally, Tate's name "appeared as [Haslam's] provider throughout [Haslam's] medical records pertaining to her January 18, 2021, [emergency room] visit to Adventist Health Tulare.  [Citation.]  The medical records divulge that Tate examined [Haslam], made orders and progress notes, and signed the discharge summary.  [Citation.]  Tate's name appeared on the [emergency department] Patient Summary, which was given to [Haslam] upon discharge from Adventist Health Tulare on January 18, 2021."

As to Princewill, the court noted "Princewill's name appeared as [Haslam's] provider throughout [Haslam's] medical records pertaining to her February 8, 2021, [emergency department] visit to Adventist Health Tulare.  [Citation.]  The medical records divulge that Princewill examined [Haslam], made physician orders and progress notes, and signed the discharge summary.  [Citation.]  Further, Princewill's name appeared on the [emergency department] Patient Summary, which was given to [Haslam] upon discharge from Adventist Health Tulare on February 8, 2021."

The court determined it "appear[ed] undisputed" that Haslam timely filed her complaint on March 24, 2022.  However, the court determined that the amendments to add Princewill and Tate as Doe defendants did not relate back to the date of the original filing.  As to Tate, the court found that Haslam's naming of Tate in the original complaint demonstrated that she possessed, on the date of filing, "the requisite knowledge of Tate's identity and facts giving rise to a cause of action against Tate."  Furthermore, there was no evidence in the record "that Tate was named initially for a reason later contradicted by an expert or other evidence, only to be readded via [D]oe amendment because a different

expert came to an alternate conclusion." Nor was there evidence that Haslam "lacked suspicion of wrongdoing at the time of the complaint."

As to Princewill, the court noted that Haslam was discharged from Princewill's care on February 8, 2021, and requested medical records on July 7, 2021. Princewill's discharge summary from February 8, 2021, indicated, " 'Sometimes surgery is needed to align the bones.' " The court determined Haslam "appeared to know, at the time of the initial filing of the complaint, that Princewill was a primary treating provider, the admitting provider[,] and that the theory under which [Haslam's] expert proceeds (ordering of a surgical consult) was stated in the discharge summary and medical records." The court also noted there was "no statement from [Haslam] in evidence that there was no suspicion of wrongdoing prior to the expert's retention" or conduct of discovery. Instead, Haslam's expert declaration listed "four potentially responsible providers without making any assertion that there was no suspicion of impropriety prior to his retention and only asserts a generalized 'lack of assessment and care.' " The court summarized: "[Haslam] knew that Princewill examined the foot, did not refer her for a surgical consult, that Princewill was the admitting and primary treating provider, on records available to [Haslam] upon her discharge and later when she requested them through counsel." As such, the court found Haslam was not " 'truly ignorant of the identity' of Princewill when the complaint was filed."

Based on the foregoing, the court found it undisputed that Haslam knew the identities and basic facts constituting claims against Tate and Princewill when she filed her complaint. Princewill and Tate therefore were not properly added as Doe defendants pursuant to section 474, and their addition to the complaint did not relate back to the date of the original filing. The court also determined it was undisputed that CEP was the employer of Princewill and Tate, and summary judgment as to CEP therefore was necessary as well.

Haslam moved for reconsideration of the order granting summary judgment based on "new evidence" suggesting she amended her complaint to substitute Princewill, Tate, and CEP as Doe defendants after being notified of an expert's opinion that they were negligent. The motion was denied.

The court granted Nelson's motion for summary judgment on February 27, 2024. The court concluded that, by at least her second visit with Nelson on March 4, 2021, Haslam "knew, or should have known, that some wrongful act, either by a prior treating medical professional or Nelson . . . occurred resulting in the anticipated future amputation." Furthermore, the court determined Haslam did not act with reasonable diligence in pursuing an expert opinion regarding Nelson's care. Because the cause of action accrued on March 4, 2021, the filing of the complaint on March 24, 2022, was untimely. Inasmuch as the initial filing was untimely, the court did not consider whether the amendment to substitute Nelson in place of a Doe defendant related back to the initial date of filing pursuant to section 474.

## DISCUSSION

Haslam argues summary judgment was improperly granted for Tate, Princewill, and Nelson because her claims are not time-barred.[5] We address her arguments regarding each defendant in turn.

## I. Standard of Review

Summary judgment should be granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003.) " 'Although application of the statute of limitations is normally a question of fact, the question becomes one of law when the evidence is susceptible of only one reasonable

---

[5] Haslam raises no separate arguments regarding the court's grant of summary judgment for CEP.

8.

conclusion.' " (*Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 64 (*Vera*); see *Brewer v. Remington* (2020) 46 Cal.App.5th 14, 28 (*Brewer*) [whether a claim is barred by the statute of limitations is " 'normally a question of fact.' . . . 'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.' "].)

"On appeal from a summary judgment ruling, we review the record de novo to determine whether triable issues of material fact exist. [Citation.] We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment." (*Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 144.)

## II.     Section 340.5 Prescribes the Applicable Statute of Limitations

"Statutes of limitations prescribe the length of time a plaintiff is given to bring suit or be barred. [Citation.] Generally, the limitation period 'runs from the moment a claim accrues.' [Citations.] California follows the ' "last element" ' accrual rule, which provides the statute of limitations runs from the occurrence of the last element essential to the cause of action. [Citation.] Our Supreme Court has described the essential elements for statute of limitations purposes as ' "wrongdoing, harm, and causation." ' " (*Brewer*, *supra*, 46 Cal.App.5th at pp. 23–24.)

Section 340.5 sets forth the statute of limitations for medical malpractice actions and provides, in relevant part, as follows:

> "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of [the] action shall be three years after the date of [the] injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. . . ."

## III.    Summary Judgment as to Tate

On appeal, Haslam has abandoned the argument that Tate was properly added as a Doe defendant pursuant to section 474 and the amendment of the complaint therefore

9.

relates back to the date of the initial filing. Instead, she argues the statute of limitations was tolled pursuant to section 351 while Tate was out of state. It is undisputed that Haslam did not raise this argument in the trial court. Nonetheless, Haslam asks us to consider this argument in the first instance because our review is de novo and we therefore may consider "any possible legal theory" advanced on appeal. We conclude this argument is forfeited and is, in any event, unsupported by the record.

" 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' [Citation.] 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.) Thus, while we are not bound by the trial court's reasoning or rationale (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630), we ordinarily will not affirm a summary judgment on grounds the parties did not have an adequate opportunity to address in the trial court (cf. *Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1402).

Section 351 provides, "If, when the cause of action accrues against a person, he [or she] is out of the State, the action may be commenced within the term herein limited, after his [or her] return to the State, and if, *after the cause of action accrues, he [or she] departs from the State, the time of his [or her] absence is not part of the time limited for the commencement of the action*." (Italics added.) Thus, section 351 tolls the statute of limitations during the time a defendant is out of state. This section is of general

applicability and applies in medical malpractice actions. (*Kaplan v. Mamelak* (2008) 162 Cal.App.4th 637, 643.)

Here, Haslam did not invoke section 351 in the trial court, either in opposition to the motion for summary judgment or in her motion for reconsideration of the court's ruling. Significantly, Haslam's separate statement of facts in opposition to the motion for summary judgment contained no facts regarding Tate's absence from the state. "A party waives a new theory on appeal when he [or she] fails to include the underlying facts in his separate statement of facts in opposing summary judgment." (*City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1493.) Furthermore, Haslam did not submit to the trial court evidence suggesting Tate was absent from the state during the limitations period. Her opposition to the motion for summary judgment and her motion for reconsideration of the court's order cited no such evidence. Haslam's failure to raise or support this argument in the trial court forfeits the issue on appeal.

On appeal, Haslam supports her tolling argument with citation to a proof of service filed August 15, 2023, reflecting that Tate was served by substitute service in Washington on August 3, 2023. This evidence was not presented to the trial court on the motion for summary judgment. In any event, Haslam does not contend that the August 3, 2023 date of service was within the limitations period. We note that Haslam was discharged from Tate's care on January 18, 2021, suffered her amputation on March 17, 2021, and initially filed suit on March 24, 2022. We fail to see how Tate's documented absence from the state on August 3, 2023, well after the apparent expiration of the limitations period, supports Haslam's tolling argument.

Haslam also asserts Tate initially could not be located for service and "was possibly evading service on purpose." According to Haslam, it was not until sometime after amendment of the complaint on April 7, 2023, and additional efforts by a private investigator, that Tate eventually was located in Washington. These assertions are

unsupported by citation to the record and, in any event, do not establish Tate was out of state during the limitations period.

Based on the foregoing, we conclude Haslam forfeited her argument that the statute of limitations was tolled as to Tate pursuant to section 351. Additionally, the argument is unsupported by the record. Haslam has not shown error in the trial court's grant of summary judgment as to Tate.[6]

## IV. Summary Judgment as to Princewill

Haslam contends her amendment of the complaint to substitute Princewill as a Doe defendant relates back to the date of the filing of the original complaint pursuant to section 474 because it was impossible for her to know of Princewill's liability until she retained an expert. As such, she contends the complaint was timely filed as to Princewill pursuant to section 340.5.[7] We conclude the requirements of section 474 were not satisfied and Haslam's claims against Princewill are time-barred.

### A. Applicable Law

When a plaintiff amends a complaint to add a new defendant, "[t]he general rule is that [the] amended complaint . . . does not relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed." (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176.) However, section 474 is a recognized exception to this general rule. (*Woo*, at p. 176.) Section 474 provides: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be

---

[6] Tate argues it would be unconstitutional to apply section 351 to his circumstance because he was out of state to pursue employment and thus engaged in interstate commerce. In light of our conclusion, we need not, and therefore do not, reach this argument.

[7] Princewill does not dispute that the complaint, filed March 24, 2022, would be timely in the event section 474 applies. We therefore do not consider whether the cause of action accrued at a later date, as we do below with regard to Nelson.

12.

designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ." In other words, "[s]ection 474 allows a plaintiff who is ignorant of a defendant's identity to commence suit—before the statute of limitations runs—by using a fictitious name for that defendant and then amending her complaint when the defendant's true name is discovered. [Citation.] If the statute's requirements are satisfied, the amendment relates back and the substituted defendant is considered to have been a party from the action's start." (*Hahn v. New York Air Brake LLC* (2022) 77 Cal.App.5th 895, 897–898.)

"The phrase 'ignorant of the name of a defendant' is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant." (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1170; see *McClatchy v. Coblentz, Patch, Duffy & Bass, LLP* (2016) 247 Cal.App.4th 368, 371–372.) "If the identity of the Doe defendant is known but, at the time of the filing of the complaint the plaintiff did not know facts that would cause a reasonable person to believe that liability is probable, the requirements of section 474 are met." (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 943 (*McOwen*).) " '[T]he relevant inquiry when the plaintiff seeks to substitute a real defendant for one sued fictitiously is what facts the plaintiff actually knew at the time the original complaint was filed.' " (*Fuller*, at p. 1170, italics omitted; see *Hahn v. New York Air Brake LLC*, *supra*, 77 Cal.App.5th at p. 900 ["The focus is on the *facts* that the plaintiff knew, not on whether the plaintiff subjectively knew she had a cause of action based on those facts."].)

"A plaintiff's ignorance must be genuine and based on a lack of knowledge of the defendant's connection with the case." (*Organizacion Comunidad de Alviso v. City of San Jose* (2021) 60 Cal.App.5th 783, 794.) However, there is "no requirement placed upon a plaintiff to exercise reasonable diligence prior to filing the complaint to discover the defendant's identity or the facts giving him a cause of action against the defendant." (*Dover v. Sadowinski* (1983) 147 Cal.App.3d 113, 116 (*Dover*).)

Case law has addressed application of the ignorance requirement in the medical negligence context. In *Dover*, the plaintiff alleged the defendants negligently caused the death of his wife. (*Dover*, *supra*, 147 Cal.App.3d at pp. 115–116.) Nineteen months after filing the initial complaint, the plaintiff amended his complaint to add an additional defendant doctor, asserting he previously was ignorant of the doctor's true name. The trial court granted summary judgment in the doctor's favor on the ground the plaintiff had not been ignorant of the doctor's identity. (*Id.* at p. 116.) The appellate court affirmed because "the evidence clearly indicate[d] that [the] plaintiff was not ignorant of the facts" (*ibid.*), given that the doctor appeared as the attending physician throughout the medical records covering the patient's approximately three-week hospitalization, conducted the admission physical, made orders and progress notes, signed the discharge summary, met with the plaintiff in person at least once, spoke with the plaintiff on multiple occasions, and informed the plaintiff that he was the doctor in charge of the patient's care. (*Id.* at pp. 116–117.) Meanwhile, the complaint alleged

> "the decedent was negligently treated by the defendants, including the Doe defendants. The complaint alleges that each of the defendants, including the Doe defendants, negligently failed to timely discover that decedent was suffering from Halothane toxicity and, by failure to make this diagnosis, prevented the decedent from receiving the proper medical care and treatment for the hepato-renal syndrome caused by the use of Halothane anesthesia. The complaint further alleges that the defendants, including the Doe defendants, failed to refer the case to a proper specialist to evaluate the decedent's complications, that they negligently failed to adequately supervise the patient's care, and that, as a result of all of this negligence and wrongful conduct and these omissions in the diagnosis, care, and treatment of the decedent by the defendants, the decedent died." (*Id.* at p. 117.)

Finally, the plaintiff's counsel admitted during argument on the motion for summary judgment that he knew at the time of filing of the defendant doctor's involvement in the patient's care but had been unaware of " '*how deeply* as a negligent individual, he was involved.' " (*Dover*, *supra*, 147 Cal.App.3d at p. 117.) The appellate court rejected the plaintiff's apparent argument that "the plaintiff must be aware of each

14.

and every detail concerning [a defendant's] involvement" (*ibid.*) to be required to name that defendant in the initial filing.  Instead, the court determined that the plaintiff's alleged ignorance of the facts that "implicated the defendant" was feigned (*id.* at p. 118).

In *McOwen*, *supra*, 153 Cal.App.4th at pages 940 through 941, the plaintiff, a diabetic, stepped on a nail and initially was treated by a nurse, who applied ointment. After nearly two months, the plaintiff was referred to a vascular surgeon with an infection.  At the initial consultation, the surgeon noted it was likely the plaintiff would lose his toe and that he had a " ' "limb-threatening disease." ' " The surgeon ordered a vascular sufficiency test, the results of which were disputed on summary judgment.  The surgeon concluded an arterial bypass to increase blood flow could not be done because of problems shown on the vascular sufficiency test.  Seven days after this consultation, a test performed on the plaintiff showed osteomyelitis in his foot.  The following day, the surgeon referred the plaintiff to an infectious disease specialist.  Days later, the plaintiff lost his toe to gangrene; a few months later, his leg was amputated below the knee.  (*Id.* at pp. 940–941.)

Plaintiff filed suit against the nurse and medical group involved in his initial treatment, as well as a number of Doe defendants.  (*McOwen*, *supra*, 153 Cal.App.4th at p. 940.)  Approximately 16 months later, he amended his complaint by substituting the vascular surgeon for one of the Does.  (*Ibid.*)  He asserted he did not learn of the surgeon's role in causing his injuries until he received supplemental discovery responses from one of the originally named defendants, identifying the surgeon as an individual who may have contributed to the plaintiff's injuries, based on an expert's opinion that the surgeon should have ordered an angiogram, rather than the vascular sufficiency test.  (*Id.* at p. 941.)  According to the surgeon, an angiogram would have revealed whether the plaintiff was " 'reconstructible,' " and a successful " 'reconstruction' " would have allowed his leg to be saved.  (*Ibid.*)

15.

The appellate court noted that the expert was "very specific" in criticizing the test ordered by the surgeon, and the record did not otherwise suggest that a theory of liability focusing on that specific test was known to the plaintiff prior to the supplemental discovery responses. (*McOwen*, *supra*, 153 Cal.App.4th at p. 944.) Furthermore, the plaintiff stated he had no suspicion of the surgeon's wrongdoing prior to the expert's deposition. (*Id.* at p. 945.) Accordingly, the appellate court determined it was a question of fact as to whether the plaintiff, at the time of the filing of the complaint, "knew facts that indicated [the surgeon] ordered the wrong test," and that he should have ordered a different test. (*Ibid.*)

## B.     Additional Background

It is undisputed that Princewill saw Haslam only once in relation to this injury, on February 8, 2021. Princewill's name appeared on a patient summary given to Haslam upon her discharge from Adventist Health Tulare on February 8, 2021. Princewill also was identified as the admitting and primary provider in the medical records. Princewill examined Haslam, made physician orders and progress notes, and signed the discharge summary. Haslam's counsel requested these medical records on July 7, 2021.

In the complaint, filed March 24, 2022, Haslam included the February 8, 2021 visit in her description of reasons for liability. The complaint alleged, in relevant part, that Haslam visited the emergency department on February 8, 2021, and that an X-ray taken on that date showed greater displacement of her fractures. Haslam was informed she possibly had an infection and needed to follow up with her primary care physician. Haslam alleged that, as of that date, she was developing sepsis and "Adventist, physicians, and staff failed to properly diagnose and treat [Haslam's] symptoms and sepsis." She also alleged generally that defendants failed to properly diagnose, treat, and care for her broken left foot bones, and failed to prevent, diagnose, and treat her infection and sepsis.

16.

On or around March 16, 2023, Haslam's retained Life Care Planner, Dr. J. Panek, who informed Haslam's counsel that he believed Tate, Princewill, and Nelson were negligent in their care. He advised counsel to retain an expert in emergency medicine to comment on the care provided by Tate and Princewill.

In a declaration dated October 6, 2023,[8] Haslam's expert witness Dr. D. Walters opined that the emergency physician assistants who treated Haslam, including Princewill, "should have been able to determine the [Lisfranc] injury by looking at the radiologic film directly." Walters opined that the worsening of the fractures of Haslam's foot shown on the X-ray taken on February 8, 2021, "would mandate an emergency orthopedic surgery referral." Walters also noted that Princewill conducted no further examination of the foot, did not mention Haslam's skin or foot condition, did not mention abnormal laboratory results that "were . . . possible contributory factors to her mechanism of injury, injury itself, and certainly predispose her to further complications," and did not conduct a medication reconciliation which could help "identify the cause of her fall and possibly prevent future falls by adjusting her medications." He attributed Haslam's injuries to the gross negligence of Tate, Princewill, and others not at issue here, and stated, "This occurred because of failing to conduct a thorough assessment, assigning the wrong diagnosis of her foot fracture, and failing to recognize and refer an Orthopedic emergency or arrange proper follow up[]on two Emergency Department Visits."

## C.    Analysis

Haslam contends it was "impossible" (capitalization omitted) for her to know Princewill was negligent until an expert was retained. We conclude the record establishes Haslam was aware of the facts giving rise to a cause of action against Princewill at the time she filed the initial complaint.

---

[8] In her opening brief, Haslam states that she retained Dr. Walters as an expert on May 23, 2023.

As stated, it is undisputed that Princewill's name appears throughout the medical records pertaining to Haslam's February 8, 2021 visit. These records describe the care provided by Princewill, including the care criticized by Haslam's retained expert. This care was set forth as a basis for liability in the initial complaint, the gravamen of which was that the defendants failed to properly diagnose, treat, and care for Haslam's broken foot and failed to prevent, diagnose, and treat her infection and sepsis. On this record, no rational trier of fact could conclude additional expert opinion was needed to inform Haslam of the facts giving rise to Princewill's potential liability or the claims alleged in the original complaint. Moreover, given Haslam's allegation in the initial complaint that Adventist Health Tulare, Tate, and Burge failed to properly diagnose and treat her injuries at her initial emergency room visit, Haslam needed no additional expert consultation to inform her that Princewill may have negligently failed to properly diagnose and treat the same injuries in the same manner at a subsequent emergency room visit. The record supports no other conclusion but that Haslam was necessarily aware of the facts giving rise to her claim against Princewill when she filed the initial complaint.

Additionally, the record before us belies Haslam's claim that she could not discover Princewill's negligence without expert opinion. Haslam amended the complaint to substitute Princewill in place of a Doe defendant after Panek opined "there were other negligent parties," including Princewill, that had not been added to the complaint. However, Panek was retained as an expert in podiatric medicine who acknowledged that an expert in emergency medicine would be needed to opine as to the standard of care applicable to Princewill. Additionally, Panek's opinion, as set forth in his expert declaration, was not based on any specific facts or theories regarding Princewill's treatment of Haslam that were unavailable to Haslam at the time of filing. Rather, Panek opined only that Princewill and others were negligent by being dismissive of Haslam,

18.

ignoring her complaints, and making little effort to assess her injuries.[9] Panek's opinion lacks the sort of "very specific" criticism that was found sufficient in *McOwen* to create a dispute of fact regarding whether the plaintiff was ignorant of facts giving rise to a cause of action against a defendant. (*McOwen*, *supra*, 153 Cal.App.4th at p. 944.) While Panek's opinion could support an inference that Haslam was unaware of " '*how deeply* as a negligent individual, [Princewill] was involved,' " such ignorance does not satisfy the requirements of section 474. (*Dover*, *supra*, 147 Cal.App.3d at p. 117.)

Haslam also points to statements made by the trial court during argument on the motion for summary judgment to support her claim that facts giving rise to Princewill's liability were unknowable without an expert opinion. At one point, the court suggested, "[R]egardless if you think he has liability, having [Princewill's] name as the primary and admitting physician would seem to be a pretty big red flag in terms of notice." Haslam's counsel responded, "He wasn't really involved in diagnosing the foot or anything. So how are we to know that he had any liability, as a layperson?" The court responded, "Based on what you told me, doesn't sound like he does." Haslam's counsel stated he initially believed Princewill "probably doesn't have much liability," but later concluded he was wrong. This exchange establishes that Haslam and her counsel were aware of facts giving rise to Princewill's liability but may have misjudged Princewill's *degree* of liability.[10] Again, such miscalculations do not satisfy the requirements of section 474.

---

[9] Although Walters subsequently opined on specific actions Princewill should have taken with regard to Haslam's care, including suggesting Haslam required an emergency orthopedic referral, Walters was not retained and did not provide an expert opinion until after Haslam amended her complaint to substitute Princewill as a defendant. Thus, Haslam did not require Walters's opinion to identify facts giving rise to a cause of action against Princewill. Rather, Haslam's claim that her ignorance could be dispelled only by expert opinion relies solely on the opinion provided by Panek.

[10] Haslam also points out that, in her deposition, she could not recall being treated by Nelson. From that, she extrapolates that she may not have remembered being treated

(*Dover*, *supra*, 147 Cal.App.3d at p. 117.) Nor do the trial court's statements regarding the potential merits of Haslam's claim create an issue of fact on this point.

In sum, the undisputed evidence establishes Haslam knew Princewill's identity and the facts giving rise to a cause of action against him when she filed the original complaint. Accordingly, the amendment to substitute Princewill in place of a Doe defendant did not satisfy the requirements of section 474. Princewill was entitled to the grant of summary judgment.

## V.     Summary Judgment as to Nelson

As to Nelson, the trial court found the complaint, filed March 24, 2022, was not timely filed pursuant to section 340.5 because the cause of action accrued on March 4, 2021. Haslam argues the complaint was timely filed and her amendment to substitute Nelson in place of a Doe defendant relates back to the date of the initial filing pursuant to section 474. We conclude the complaint was not timely filed and we therefore do not reach the question of whether the amendment to substitute Nelson in place of a Doe defendant satisfies the requirements of section 474.

### A.     Effect of 90-day Notice of Intent To Sue

Haslam argues her claims against Nelson are not time-barred because she sent a 90-day notice of intent to sue that extended the statute of limitations by an additional 90 days.

As stated, section 340.5 provides that the statute of limitations for a medical malpractice action expires one year after the plaintiff's discovery of the injury or three years after the date of injury, whichever comes first. However, section 364, subdivision (a) requires that a plaintiff, before filing a medical malpractice action, give the defendant at least 90 days' notice of intent to sue. When the notice is given within the last 90 days

_____

by Princewill. This assertion is unsupported, and Haslam's counsel's statements reflect that she was aware of Princewill's involvement in her care at the time of filing.

prior to the expiration of the limitations period, the notice of intent will extend the limitations period for an additional 90 days after service of the notice. (§ 364, subd. (d); *Woods v. Young* (1991) 53 Cal.3d 315, 326, 331.)

Here, Haslam's last visit with Nelson was on March 4, 2021. On that date, Nelson noted that it was highly likely Haslam would require foot amputation. Haslam underwent amputation on March 17, 2021. The trial court determined Haslam's cause of action accrued on March 4, 2021, when Haslam knew or should have known that a wrongful act occurred, resulting in the anticipated future amputation. Seemingly adopting the trial court's determination of the accrual date, Haslam asserts that she sent a 90-day notice of intent to sue letter to unspecified defendants on December 28, 2021, extending the limitations period by an additional 90 days. She then filed her complaint on March 24, 2022. Accordingly, she asserts the complaint was timely filed.

As Nelson points out, the record on appeal contains no evidence of Haslam's 90-day notice of intent to sue. Neither the letter nor any supporting declaration was submitted with Haslam's evidence in support of her opposition to the motion for summary judgment. Her separate statement of facts in opposition to the motion for summary judgment does not reference a 90-day notice of intent to sue. Although Haslam mentioned section 364, subdivision (d) in her opposition to the motion, she did not rely on this provision to argue her complaint was timely filed.

Accordingly, Haslam's argument that the statute of limitations was extended by her sending of a 90-day notice of intent to sue is both forfeited and unsupported.

B. **Later Accrual Date Due to Delayed Discovery of the Injury**

As stated, the trial court determined Haslam's claims against Nelson accrued on March 4, 2021, because, by that date, she "knew, or should have known, that some wrongful act, either by a prior treating medical professional or Nelson . . . occurred resulting in the anticipated future amputation." Additionally, the court determined Haslam did not act with reasonable diligence in pursuing her claim against Nelson.

Meanwhile, Haslam contends the statute of limitations "did not start running against . . . Nelson when her foot was misdiagnosed or underwent amputation, rather it began when she became aware of sufficient facts that would raise a cause of action against each of the defendants." However, this argument relies on the legal standards applicable to the relation back doctrine under section 474, rather than those applicable to determining when a cause of action accrues for purposes of section 340.5. (See *McOwen*, *supra*, 153 Cal.App.4th at p. 943 [distinguishing delayed claim accrual from relation back to a timely filing].) Accordingly, Haslam's contentions are not particularly on point. Nonetheless, in light of the trial court's ruling and Haslam's argument, we consider whether there is a factual dispute as to whether Haslam's claim accrued on a later date that would render the March 24, 2022 filing timely. We conclude there is not.

### i.    Applicable Law

As stated, section 340.5 provides that the time to commence an action for medical negligence begins when the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury. " '[T]he term "injury," as used in section 340.5, means both "a person's physical condition *and* its 'negligent cause.' " ' [Citation.] The word 'injury' for purposes of section 340.5 is a term of art that 'refer[s] to the damaging effect of the alleged wrongful act and not to the act itself.' [Citation.] The injury is not necessarily the ultimate harm suffered, but instead occurs at 'the point at which "appreciable harm" [is] first manifested.' " (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.)

"An injury manifests when damage is 'evidenced in some significant fashion; when the damage has clearly surfaced and is noticeable.' " (*Filosa v. Alagappan* (2020) 59 Cal.App.5th 772, 779 (*Filosa*).) "For purposes of the one-year period, discovery of the injury means the plaintiff has discovered 'both his or her injury and its negligent cause.' [Citation.] The plaintiff 'need not be aware of either the specific facts or the actual negligent cause of the injury. [Citation.] If the plaintiff has notice or information

of circumstances that would put a reasonable person on inquiry notice, the limitation period is activated.' " (*Ibid.*)

"The limitation period of section 340.5 may commence, as a matter of law, once appreciable harm unambiguously manifests which causes *actual* suspicion of wrongdoing." (*Brewer*, *supra*, 46 Cal.App.5th at p. 25.) "[S]uspicion of wrongdoing may activate the statute of limitations, even if one is unaware of the exact legal cause of action available." (*Ibid.*) For example, where a patient died following two surgeries on back-to-back days, and his surviving family initially sued only those involved in the second surgery, their later attempt to add the surgeon involved in the first surgery was held to be time-barred. (*Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1293–1294, 1300–1301 (*Knowles*).) Although the plaintiffs claimed to be unaware of the first surgeon's negligence until an expert witness opined thereon, the appellate court held the plaintiffs' initial suspicion of negligence triggered the limitations period. (*Id.* at p. 1300; cf., *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 898 ["[I]f one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period."].) In other words, "[t]he facts supported only one conclusion—the statute commenced as to all the physicians' potential malpractice as soon as [the patient] suffered appreciable harm (death), which caused the plaintiffs to become suspicious of wrongdoing." (*Brewer*, at p. 25; see *Knowles*, at p. 1301.)

However, "[i]f 'a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.' " (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.) For example, in *Brewer*, the plaintiff underwent surgery from which she awoke with paralysis and loss of sensation. (*Id.* at p. 17.) A different provider waited over a month to perform a second surgery to address the injury, after which she regained some function. (*Id.* at p. 18.) The

plaintiff initially sued only the providers involved in the first surgery. (*Ibid.*) However, after an expert opined the doctor involved in her subsequent treatment breached the standard of care by delaying the second surgery, which resulted in neurological deficits, she amended the complaint to substitute the latter doctor as a Doe defendant after expiration of the statute of limitations. (*Id.* at p. 19.) A panel of this court distinguished *Knowles* and concluded there remained an issue of fact as to whether the plaintiff reasonably did not link her persistent symptoms after the second surgery to the second surgeon's wrongdoing. (*Id.* at pp. 29–30.) We explained, "The harm resulting from medical treatment may not always be objectively appreciable to the layperson, thus its discovery may be delayed until someone with expertise uncovers it. This type of situation is distinguishable from cases . . . where appreciable harm had manifested and had given rise to suspicions of professional negligence, but the plaintiffs did not learn until later from medical or legal experts the precise extent or nature of the harm or its precise cause, or the existence of a legal cause of action." (*Id.* at p. 31.)

### ii.     Analysis

We begin by asking at what point Haslam's appreciable harm first manifested. (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.) As the trial court determined, Haslam's appreciable harm arguably manifested on March 4, 2021, when Nelson informed her that an amputation was likely. Certainly, the appreciable harm manifested no later than March 17, 2021, the date of the amputation. By that date, the harm had clearly surfaced, was indisputably noticeable to Haslam, and Haslam was fully aware of it. (*Filosa*, *supra*, 59 Cal.App.5th at p. 779.)

We next ask when Haslam suspected, or should have suspected, wrongdoing as the cause of that harm. (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.) Haslam does not dispute the trial court's determination that she should have suspected wrongdoing as a cause of her injury by the March 4, 2021 visit. Rather, Haslam maintains she had no reason to suspect *Nelson*'s wrongdoing as a cause of her injury until Panek opined Nelson was

24.

negligent in allowing Haslam to continue walking on her broken foot in a boot, rather than advising her not to bear weight. However, a cause of action accrues when the plaintiff first suspects wrongdoing, even if he or she has not yet learned the actual negligent cause of the injury. (*Filosa*, *supra*, 59 Cal.App.5th at p. 779.) "It is a plaintiff's *suspicion* of negligence, rather than an expert's *opinion*, that triggers the limitation period." (*Knowles*, *supra*, 118 Cal.App.4th at p. 1300.) Furthermore, the statute commenced as to all the providers' potential negligence as soon as Haslam became suspicious that wrongdoing was the cause of the harm she suffered. (*Brewer*, at p. 25; see *Knowles*, at p. 1301.) This is not a case where Haslam contends she suffered a *separate* harm by Nelson's negligence, distinct from the harm she suffered at the hands of other providers. Rather, she argues Nelson's wrongdoing contributed to the *same harm* caused by other providers. Accordingly, her initial suspicion of negligence as to any of the providers triggered the limitations period as to Nelson. (Compare *Knowles*, at p. 1300 with *Brewer*, at p. 31.)

Haslam's reliance on expert opinion is misplaced for an additional reason. As the trial court correctly noted, section 340.5 imposes a "reasonable diligence" requirement. (§ 340.5.) "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111.) " '[W]hen the patient's "reasonably founded suspicions [have been aroused]," and she has actually "become alerted to the necessity for investigation and pursuit of her remedies," the one-year period for suit begins.' " (*Artal v. Allen* (2003) 111 Cal.App.4th 273, 279.) " 'The malpractice litigant is required to diligently pursue her claim through discovery of the cause of her injury. And if she fails to do so she faces the prospect that the action will be time barred.' " (*Ibid.*) Here, Haslam's injury manifested in March 2021. However, Panek

was not asked to evaluate her care until March 2023, nearly two years later. Haslam does not explain how this delay constitutes a diligent pursuit of her claim against Nelson.

The facts support only one conclusion: that the statute of limitations commenced as to Nelson on March 4, 2021, and in any event no later than March 17, 2021, the date Haslam suffered the amputation. Even drawing all reasonable inferences in Haslam's favor, the complaint filed on March 24, 2022, was time-barred by section 340.5.

## C.     Application of Section 474

Haslam argues her amendment to substitute Nelson in place of a Doe defendant relates back to the date of the initial filing. However, because we have concluded the initial filing was untimely as to Nelson, we need not consider whether the substitution relates back to that date, inasmuch as relation back to an untimely filed complaint cannot save Haslam's claims from the limitations bar. Accordingly, we do not further address these contentions.

## DISPOSITION

The judgments are affirmed. Costs are awarded to defendants and respondents.


                                                                    DETJEN, J.

WE CONCUR:



HILL, P. J.



FAIN, J.*

---

\* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.